UNITED STATES of America, Appellee.

v.

Bernard TOLKOW, Appellant.

No. 369, Docket 75–1251.

United States Court of Appeals,
Second Circuit.

Argued Oct. 23, 1975.

Decided March 26, 1976.

Charles S. Desmond, Buffalo, N. Y., for appellant.

Lauren S. Kahn, Atty., Dept. of Justice, Washington, D. C. (David G. Trager, U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., Earl E. Shamwell, Washington, D. C., and Richard Shanley, Sp. Attys., Dept. of Justice, Brooklyn, N. Y., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., of counsel), for appellee.

Before MOORE, FEINBERG, VAN GRAAFEILAND, Circuit Judges.

MOORE, Circuit Judge:

Bernard Tolkow, trustee of Amalgamated Local 355's United Welfare Fund ("Fund"),[1] appeals from a judgment entered after a jury trial in the United States District Court for the Eastern District of New York. The jury convicted appellant of four counts of violating 18 U.S.C. § 1027 for knowingly failing to disclose party-in-inter·est loans in the Fund's annual financial report.

Party-in-interest loans are loans made by a union pension or trust fund to businesses in which fund officials have a financial interest. 18 U.S.C. § 1027 (1966) *as amended,* 18 U.S.C. § 1027 (Supp.1976) and its counterpart, The Welfare and Pension Plans Disclosure Act, Pub.L. 85–836, 72 Stat. 997 (1958), *superseded by* 29 U.S.C. § 1001 *et seq.* (1975), were enacted to curb potential self-dealing in such circumstances by requiring disclosure of such loans and relationships in a fund's annual reports. 1962 U.S.Code Cong. and Admin.News, pp. 1532, 1537–39, 1547.[2] Appellant argues, *in-*

---

1. Appellant was also trustee and administrator of the Fund's Security Division. In the context of this appeal the distinction is immaterial.

2. 18 U.S.C. § 1027 (1966) provided:

   "§ 1027. *False statements and concealment of facts in relation to documents required by the Welfare and Pension Plans Disclosure Act*

   Whoever, in any document required by the Welfare and Pension Plans Disclosure Act (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such Act or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such Act to be published or any information required by such Act to be certified, shall be fined not more than $10,000, or imprisoned not more than five years, or both." Act of Mar. 20, 1962, Pub.L. No. 87–420, § 17(c), 76 Stat. 42.

   The Welfare and Pension Plans Disclosure Act, required a detailed listing in the Fund's annual report of all loans made by the Fund to any party-in-interest including the trustee. This Act was completely superseded by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1031 effective January 1, 1975, and § 1027 was correspondingly amended. Act of Sept. 2, 1974, Pub.L. No. 93–406, Title I, § 111(a)(2)(B)(i), (ii), 88 Stat. 851, *amending* 18 U.S.C. § 1027 (1966). Since appellant's activities occurred prior to the effective date of the new statutes, he was prosecuted under the predecessor statutes pursuant to a provision of the superseding legislation which provides that the Welfare and Pension Plans Disclosure Act continues to apply to conduct occurring prior to January 1, 1975. 29 U.S.C. § 1031 (1975).

*ter alia,* that the evidence is insufficient to sustain his conviction and that the lower court erroneously charged the jury. A review of the facts facilitates analysis of these claims.

Appellant and the Fund became involved with Robert W. Wendell and his house building activities along the northern shore of Long Island. Wendell and his associate conducted this business through several separately named corporations including Salonga Properties, Salonga Homes and Brightwaters Associates. Wendell and his wife also conducted business in the corporate name of Harbor Planning.

Prior to 1969 Wendell received a series of loans from the Fund totalling $700,000, but the business deteriorated, and in early 1969 he sought more money. On February 24, 1969, the Fund gave him a mortgage loan earmarked for the Salonga entities.

Appellant became personally involved shortly thereafter. In April 1969 he told Wendell that he had some people who were interested in investing $100,000 in Wendell's business in return for one-half of everything that Wendell owned or might build in the future. Appellant stipulated that the money would have to go into one of the corporations which had not previously borrowed money from the Fund because he did not want to appear to be connected with the investment. Consequently, Brightwaters Associates was designated to receive the investment since it had not previously been earmarked for Fund loans.

In April and May, appellant proceeded to deliver to Wendell installments of the investment. $80,000 was ultimately invested. Wendell initially deposited the $80,000 in the Brightwaters Associates' account, but he subsequently diverted it for use in Salonga Properties' undertakings.

In the spring of 1970 the Fund loaned Wendell $45,000 for his Harbor Planning enterprises. After the loan had been repaid, on November 30, 1970, appellant invested $35,000 of his own funds in Harbor Planning, acquired 50% of its shares and became its secretary.

In August and October 1970, the Fund made additional loans to Wendell's corporations. Before each loan was authorized, Wendell gave appellant a check payable to either appellant's sister-in-law or her husband. Each check was endorsed over to appellant by the named payee or by appellant himself. Subsequently, from November 1970 until February 1971, each time Wendell requested additional loans from the Fund, he wrote a check payable to appellant's sister-in-law. Appellant signed his sister-in-law's name to each check and endorsed it to himself.

In April 1971 appellant called Wendell and asked him whether the Fund had previously loaned money to Harbor Planning. Upon being informed of the spring 1970 Fund loan, appellant made plans to be bought out, but they were not consummated until after January 21, 1972, when Wendell's stock in Harbor Planning and his other enterprises was conveyed to his attorney. His attorney formed a holding company but, despite additional Fund loans, the real estate operations collapsed into bankruptcy.

Despite appellant's investments in Wendell's enterprises, the annual reports filed by the Fund for the years 1969, 1970, 1971 and 1972 did not disclose any party-in-interest loans. Appellant testified that he never read any of the reports and that the Fund's accountant was entirely responsible for their preparation. But every report bore appellant's signature, and the accountant never asked, and appellant never disclosed, whether he had an interest in the corporations to which the Fund had made loans.

## SUFFICIENCY OF EVIDENCE

Appellant argues that he was not required to make any disclosures because there was no evidence that he had invested in corporations which received loans from the Fund. He asserted that he was a mere conduit for his relatives' investments in Brightwaters Associates, and did not invest in Harbor Planning until after the Fund's loan to that corporation had been entirely repaid. We disagree.

The conclusion most probably drawn by the jury is that appellant's story was merely a shrewd but unsuccessful device to bleach out of his investments a tell-tale stain of illegality. Judged in a light most favorable to the government, there was sufficient evidence to conclude that appellant was the true, albeit undisclosed, principal in the April 1969 deal and that he acquired a 50% share in everything owned or thereafter acquired by Wendell in exchange for his $80,000 investment. Appellant brought Wendell to the office of one Portnoy, and Portnoy concededly wrote a $10,000 check payable to Brightwaters. But Portnoy was not the investor. He was refunded for the check by appellant. This procedure was subsequently repeated in the amount of $5,000. Appellant also gave Wendell other money which brought the total investment to $80,000. It may be that appellant took back receipts in the name of his father-in-law, Hyman Gechter, and his sister-in-law's husband, Herbert Kadison. But the acceptance of receipts did not transform Gechter and Kadison into investors. Appellant's sister-in-law and her husband denied investing any money in, or knowing anything about Wendell or his businesses. In addition, there was testimony that Wendell had never met the husband or the father-in-law.

■ It is immaterial that the investment was initially earmarked by Wendell for an entity which had never previously borrowed from the Fund. Regardless of the use to which appellant's investment was put, by conveying it to Wendell, appellant acquired by the middle of 1969 a 50% interest in all of Wendell's property, including Harbor Planning and Brightwaters Associates. Appellant did not liquidate this investment until 1972. His additional $35,000 investment in Harbor Planning evidenced a continuing, if not expanding, participation. Since he was a trustee of the Fund with an interest in these corporations, for which Wendell had received Fund loans, he was obligated to disclose that interest in the annual reports.

Relying on his assertedly passive role in the preparation of the annual reports, ap-

pellant next argues that even if there were party-in-interest loans which should have been disclosed, there was insufficient evidence that he acted knowingly when he failed to disclose them. This argument is equally unpersuasive.

■ Each report bore appellant's undisputed signature; that signature was prima facie proof of his knowledge of their contents. *United States v. Romanow,* 505 F.2d 813 (1st Cir. 1974) (conviction of willfully making false material declaration on a tax form); *United States v. Bath,* 504 F.2d 456, 460 (10th Cir. 1974) (conviction of, *inter alia,* knowingly reporting union money payments to hired pickets as "strike benefits"); 1 Wharton's Criminal Evidence § 117, p. 196 (13th ed. 1972). Since the reports admittedly did not disclose the loans and since the evidence when viewed in a light most favorable to the government did not, as a matter of law, preclude the inference of knowledge, there was sufficient evidence that appellant acted knowingly when he signed the reports which failed to disclose the party-in-interest loans.

■ Appellant is precluded from relying on the accountant's preparation of the Fund's reports to insulate himself from liability. Reliance upon an accountant's work is never a defense to criminal charges of fraudulent nondisclosure when the defendant asserting reliance has not disclosed all material facts to the accountant. *Bath, supra; United States v. Cox,* 348 F.2d 294 (6th Cir. 1965).

## ERRONEOUS INSTRUCTIONS

One of appellant's principal contentions concerning the lower court's charge is that it was plain error to omit an instruction that an element of the crime was knowledge of the duty to disclose the party-in-interest loans. Since this duty is imposed by the statute under which appellant was prosecuted, appellant's argument assumes that the statute's inclusion of the term "knowingly" required proof not only of his knowing commission of acts constituting the offense, but also of his specific intent to do that which the law forbids.

Appellant's position raises the perennial question of the nature of *mens rea* required by a criminal statute which employs the terms "willfully" and/or "knowingly." Were these terms talismanic, resolution of the question would be facile. But they encompass a spectrum of meanings. At one end they have been held to mean mere conscious or voluntary commission of acts prescribed by the statute without any knowledge of the statute itself, *Tager v. SEC,* 344 F.2d 5 (2d Cir. 1965). At the other end they have been interpreted as requiring actual knowledge of the existence of an obligation and a wrongful intent to evade it. *Hargrove v. United States,* 67 F.2d 820, 823 (5th Cir. 1933). Between these poles are numerous variations of which one commonly encountered is: voluntary commission of proscribed actions "without ground for believing it is lawful . . . or conduct marked by careless disregard whether or not one has the right so to act." *United States v. Budzanoski,* 462 F.2d 443, 452 (3d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972).

■ In any given case the appropriate signification depends upon the context in which the term "knowingly" or "wilfully" is used. *United States v. Murdock,* 290 U.S. 389, 395, 54 S.Ct. 223, 225, 78 L.Ed. 381, 385 (1933). Consequently, we turn to a consideration of the statute under which appellant was prosecuted. It states:

> "Whoever . . . knowingly . . fails to disclose any fact the disclosure of which is required by [the Welfare and Pension Plans Disclosure Act] shall be fined not more than $10,000, or imprisoned not more than five years, or both."

This language suggests that Congress did not intend the stringent scienter requirement exemplified by the tax statute construed in *Hargrove, supra.* Had Congress wished to require as an element of the crime actual knowledge of the reporting obligations imposed by the statute and the Welfare and Pension Plans Disclosure Act ("WPPDA"), it could have done so explicitly in which case the statute would have read:

> "Whoever knowingly fails to disclose any fact, knowing the disclosure to be required by the WPPDA. . . . "

In the absence of any explicit language to this effect, we conclude that actual knowledge of the duties imposed by the pertinent statutes is not a requisite element of the crime defined by 18 U.S.C. § 1027 (1966), as amended 18 U.S.C. § 1027 (Supp.1976). Compare its language with 18 U.S.C. § 545 and the analysis of the latter statutes' *mens rea* element in *Babb v. United States,* 252 F.2d 702 (5th Cir.), *cert. denied,* 356 U.S. 974, 78 S.Ct. 1137, 2 L.Ed.2d 1147 (1958).

■ 18 U.S.C. § 1027 (1966), *as amended* 18 U.S.C. § 1027 (Supp.1976), was enacted to provide enforcement teeth for the WPPDA. H.Rep.No.998, 87th Cong.2d Sess. (1962), 1962 U.S.Code Cong. and Admin.News, pp. 1532, 1537–39. The WPPDA was designed to protect the interests of participants in employee welfare and pension plans by requiring disclosure and reporting to participants and beneficiaries of financial information which would enable them to effectively check potential mismanagement of the plans. S.Rep.No.1440, 85th Cong.2d Sess. (1958), 1958 U.S.Code Cong. and Admin.News, pp. 4137, 4153. In light of this legislative intent and the fact that persons subject to these provisions occupy fiduciary positions and bear concomitant responsibilities, we conclude that the term "knowingly" requires proof of a voluntary, conscious failure to disclose without ground for believing that such non-disclosure is lawful or with reckless disregard for whether or not it is lawful. Not surprisingly, this interpretation parallels the construction of analogous statutes reflecting similar Congressional policies. *See, United States v. Ottley,* 509 F.2d 667, 672 (2d Cir. 1975) (Court instruction of reckless disregard adequate in prosecution for willful failure to maintain records required to be reported by Landrum-Griffin Act), citing with approval *Budzanoski, supra.*

■ Since the statute does not require proof of actual knowledge of its obligations, it was not error to refuse appellant's request to instruct the jury that knowledge of

the duty to disclose was an element of the crime. *United States v. Fayette,* 388 F.2d 728, 737 (2d Cir. 1968). Such an instruction would have been an inaccurate statement of the law and might have misled the jury to think that a person who knowingly committed the acts prohibited by the statute was culpable only if he had actual subjective knowledge of the statute itself.

Appellant next argues that the instructions concerning knowledge which the court did recite were erroneous. The court charged, *inter alia,* that

"the word 'knowingly' as used in the crimes charged means that the act was done voluntarily and purposely and not because of mistake or accident. However, you must bear in mind that, that knowledge may be proven by a defendant's conduct and by all the facts and circumstances appearing from the evidence. No person may intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate." (14 Apr.Tr. 30)

■ These instructions adequately apprised the jury of the statute's requirement that appellant knowingly committed the acts constituting the offense. It was not error to deny appellant's request for the exculpatory "other innocent reason" charge, since the charged alternatives of "mistake and accident" succinctly encompassed all the conceivable innocent reasons which could possibly excuse appellant's failure to disclose.

■ However, the instruction did not explicitly require the jury to find that appellant acted without ground for believing that his acts were lawful or with reckless disregard for the statute. In any event,

appellant did not object to this portion of the charge and the error, if any, was not plain. *See United States v. Ottley, supra,* 509 F.2d at 673. The proof of appellant's culpable disregard of the reporting obligations was more than sufficient. Each report contained notification of the statutory duty above the space where appellant signed his name, and as we have previously observed, appellant's signature upon the reports is prima facie proof of his knowledge of their contents. Moreover, appellant's concern whether the Fund had previously loaned money to Harbor Planning was itself strong circumstantial evidence that he knew that party-in-interest loans were required to be disclosed.

■ Appellant also contends that the court's instructions unfairly singled out defendant's testimony by characterizing him as being more likely to lie than other witnesses.[3] We disagree. The jury was told that self-interest did not necessarily result in lies and that other witnesses also had interests which might affect their credibility. 14 Apr.Tr. 36. When viewed either in isolation or in the context of the entire charge, the instructions concerning the defendant's credibility were neither unfair nor misleading. *United States v. Mahler,* 363 F.2d 673, 678 (2d Cir. 1968).

## UNAUTHORIZED APPEARANCE BEFORE GRAND JURY

■ Finally, appellant argues that the Special Attorneys who appeared before the grand jury which returned the indictment were not authorized to do so and that, as a consequence, the indictment should be dismissed. This argument is foreclosed by our

---

3. "Now, the defendant himself has taken the stand in this case and testified in his own behalf. Obviously he has a deep, personal interest in the result of his prosecution.

Indeed, it is fair to say he has the greatest stake in its outcome.

Interest creates a motive for false testimony; the greater the interest the stronger the motive, and a defendant's interest in the result of his trial is of a character possessed by no other witness.

In appraising his credibility, you may take that fact into consideration. *However, it by no means follows that simply because a person has a vital interest in the end result that he is not capable of telling a truthful, candid and straight-forward story.*

It is for you to decide what extent, if at all, his interest has affected or colored his testimony" (Emphasis added). (14 Apr.Tr. 38–39).

decision in *In re Persico,* 522 F.2d 41 (2 Cir. 1975).

The judgment of conviction is affirmed.