UNITED STATES of America,
Plaintiff-Appellee,

v.

S & VEE CARTAGE COMPANY, INC., Silverio Vitello aka Sal Vitello, and Anna Vitello, Defendants-Appellants.

No. 81–1801.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1983.

Decided April 14, 1983.

Rehearing and Rehearing En Banc
Denied June 3, 1983.

David F. DuMouchel (argued), Detroit, Mich., for defendants-appellants.

Leonard R. Gilman, U.S. Atty., Walter Kozar (argued), Detroit, Mich., for plaintiff-appellee.

Before LIVELY, Circuit Judge, and PHILLIPS and BROWN, Senior Circuit Judges.

PHILLIPS, Senior Circuit Judge.

Defendants S & Vee Cartage Company, Inc., Silverio Vitello and Mrs. Anna Vitello appeal from jury convictions on charges of knowingly making false statements in documents required to be kept by employee welfare and pension funds (18 U.S.C. §§ 1027 and 2 (1976)); conspiracy to make false statements in these documents (18 U.S.C. § 371 (1976); and mail fraud (18 U.S.C. § 1341 (1976). The principal issue raised on appeal is whether 18 U.S.C. § 1027 was intended by Congress to cover employers. Other contentions are that the District Court improperly instructed the jury as to the mens rea required to violate 18 U.S.C. § 1027; that a corporation may not be convicted of conspiring with its officers; and that there was insufficient evidence to sustain the conviction of defendant Silverio Vitello. We find all of appellants' arguments to be without merit and affirm their convictions.

I

S & Vee Cartage Company (S & Vee) is a steelhauling business located in Detroit and Warren, Michigan. Defendant Silverio Vitello is the president, treasurer and chief operating officer of the company. His wife, Mrs. Anna Vitello, is the sole shareholder, the vice president and the secretary of the company. The corporation has no other officers or directors.

In 1973, S & Vee became a party to certain collective bargaining agreements with Locals 299 and 124 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Pursuant to these agreements, S & Vee was required to make contributions for all its regular employees to the Central States Southeast and Southwest Areas Pension Fund (Pension Fund), and the Michigan Conference of Teamsters Welfare Fund (Welfare Fund). The mechanism by which S & Vee was required to report its eligible employees and the amount of contributions due the Pension Fund was the Employee Billing Changes and Corrections forms (EBCC forms). S & Vee was required to complete and send these forms to the Pension Fund each time there was a material change in the status of its employees. A similar mechanism was used for reporting to the Welfare Fund. S & Vee was required to complete and send to the Welfare Fund Monthly Contribution Reports (MCRs).

The evidence presented at the trial showed, to the satisfaction of the jury, that the defendants-appellants conspired to devise, and carried out, a scheme to defraud the Pension Fund, the Welfare Fund and its employees of contributions owed by S & Vee to these funds. Specifically, defendants S & Vee and Anna Vitello falsified a November 6, 1978, EBCC form sent to the Pension Fund by understating the number of its eligible employees. During 1979, de-

fendant S & Vee falsified six MCRs that were sent to the Welfare Fund by understating again the number of eligible employees, understating the amount of contributions due, and naming two individuals as eligible employees when they were not eligible. In addition, all three defendants falsified an August 6, 1979, form which ultimately was sent to the Pension Fund by understating the number of eligible employees and by listing, as terminated, employees who were added after à March 1979 Pension Fund audit of S & Vee and who remained active and eligible beyond August 6, 1979.

After the jury verdicts, the District Court fined S & V a total of $25,000. Mr. and Mrs. Vitello each were sentenced to a total of two years imprisonment, and fined $10,-000 and $11,000 respectively.

## II

The question concerning whether 18 U.S.C. § 1027 covers employers appears to be one of first impression. The statute provides as follows:

Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined not more than $10,000, or imprisoned not more than five years, or both. (Emphasis supplied.) 18 U.S.C. § 1027 (1976).

Appellants contend that they, as employers, are not covered by this section because Congress intended it to cover only fiduciaries of employee welfare and pension funds, and also because the forms and reports sent

by them to the funds involved in the present case are not the types of documents referred to in the statute. Relying first on the legislative history behind § 1027 and the acts it was designed to enforce, appellants note the frequent references to welfare and pension plan fiduciaries and the concern expressed for dealing with abuses in the administration of these types of funds. See H.R.Rep. 93–533, 93rd Cong., 2nd Sess., reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4639–43; H.R.Rep. 998, 87th Cong., 2nd Sess. reprinted in 1962 U.S. Code Cong. & Ad.News 1532, 1532–51; S.Rep. No. 1440, 85th Cong., 2nd Sess. reprinted in 1958 U.S.Code Cong. & Ad.News 4137–47. Second, they focus on the fact that the few reported cases involving prosecutions brought under § 1027 have dealt with fiduciaries of employee benefit funds. See United States v. Tolkow, 532 F.2d 853 (2nd Cir.1976); United States v. Santiago, 528 F.2d 1130 (2d Cir.), cert. denied, 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976); United States v. McCrae, 344 F.Supp. 942 (E.D.Pa.1972). Third, with respect to the types of documents involved, they point out that the statute refers to false statements made in documents required "to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan...." EBCC forms and MCRs, they contend, do not fall into any of these categories.

We find the arguments of appellants to be unimpressive. The statute, 18 U.S.C. § 1027, provides in broad language, unequivocally and without limitation, that "[w]hoever" knowingly makes any false statement or conceals facts in any documents required by Title I of the Employee Retirement Income Security Act of 1974 (E.R.I.S.A.) to be published, or kept by an employee benefit plan or certified to the administrator of any such plan, may be held criminally culpable. No differentiation is made between an employer or a fiduciary of an employee benefit or welfare fund.

The rule of statutory construction in such a situation was stated by the Supreme Court in *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981):

> In determining the scope of a statute, we look first to its language. If the statutory language is unambiguous, in the absence of "a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ "Whoever" clearly is sufficiently broad to include employers as well as fiduciaries. We conclude that appellants, as an "employer," are included within the provisions of § 1027.

The only relevant limitation found in § 1027 deals with the type of documents containing false statements. Although EBCC reports and MCRs are not required "to be published" or "certified to an administrator" of an employee benefit plan, the evidence establishes that they are covered by § 1027 because they are required "to be kept" under § 107 of E.R.I.S.A., 29 U.S.C. § 1027 (1976).

29 U.S.C. § 1027, entitled "Retention of Records," provides as follows:

> Every person subject to a requirement to file any description or report or to certify any information therefor under this subchapter or who would be subject to such a requirement but for an exemption or simplified reporting requirement under section 1024(a)(2) or (3) of this title shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records available for examination for a period of not less than six years after the filing date of the documents

based on the information which they contain, or . . . . 29 U.S.C. § 1027 (1976).

The EBCC forms and MCRs must be retained under this section because they contain the necessary information and data from which annual reports, required under 29 U.S.C. §§ 1023(a)(2)(A) and 1024(a) (1976) to be published and sent by the administrator of a fund to the Secretary of Labor, "may be verified, explained, or clarified, and checked for accuracy and completeness . . . ." The evidence shows that these documents constitute the primary source, if not the sole source, available to trustees of pension and welfare funds with respect to the names of the employees covered and the amount of contributions made by employers.

A federal regulation, 29 C.F.R. § 486(3)(c) (1982), supports the conclusion that employer documents of this type are required to be retained under § 107 of E.R.I.S.A. This regulation originated as a 1963 Department of Labor interpretative bulletin relating to record retention requirements under the predecessor of E.R.I.S.A., § 11 (29 U.S.C. § 308b) of the Welfare and Pension Plan Disclosure Act of 1958 (W.P.P. D.A.), Pub.L. 85–836, 72 Stat. 997, *reprinted in* 1958 U.S.Code Cong. & Ad.News 1172–80, *repealed by,* The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1976 & Supp. V 1981). The language in § 11 of the W.P.P.D.A. is virtually identical to that in § 107 of E.R.I.S.A. There is no indication that the requirement for the retention of these types of records was changed by the enactment of E.R.I.S.A.

■ The regulation provides as follows:

> (c) Records maintained shall also include, where appropriate, information certified to the Administrator by an insurance carrier or service or other organization. Other records such as payrolls from contributing employers, which the reporting person, trustee, or organization, as described in § 486.2 obtains in the regular course of its operations, to the extent such records may be used for said

verifying or checking shall also be retained.

29 C.F.R. § 486(3)(c) (1982).

Since EBCC forms and MCRs, like employee payrolls, are used by trustees of welfare and pension funds for "verifying and checking," it follows that they are required to be retained under § 107 of E.R.I.S.A., 29 U.S.C. § 1027 (1976). Therefore, we reject the argument of appellants that the documents containing the false statements in this case are not covered by the statute.

Likewise, we find no expression of legislative intent contrary to the broad language of 18 U.S.C. § 1027, which we conclude is applicable to employers who knowingly make false statements in E.R.I.S.A. documents. *See United States v. Turkette, supra,* 452 U.S. at 580, 101 S.Ct. at 2527. In 1958, Congress enacted the Welfare and Pension Plans Disclosure Act (W.P.P.D.A.), Pub.L. 85–836, 72 Stat. 997, *reprinted in* 1958 U.S.Code Cong. & Ad.News 1172, *repealed by* The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1976 & Supp. V 1981). The W.P.P.D.A. was enacted after a comprehensive investigation into numerous abuses in the administration of employee welfare and pension plans. The general goal of the W.P.P.D.A. was to protect participants and beneficiaries of these types of plans by requiring the plans to disclose and report financial information.

Section 1027 was added later as part of the Welfare and Pension Plans Disclosure Act Amendments of 1962, Pub.L. 87–420, 76 Stat. 35, *reprinted in* 1962 U.S.Code Cong. & Ad.News 43, 51. It was enacted along with two other new criminal statutes, 18 U.S.C. § 644 (dealing with theft or embezzlement from employer benefit plans) and 18 U.S.C. § 1954 (dealing with kickbacks or conflict of interest payments to influence the operations of such plans). In these enactments Congress intended to provide the "enforcement teeth which [were] lacking in the existing law . . . ." H.Rep. No. 998, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong. & Ad.News 1532, 1537.

In 1974, E.R.I.S.A. was enacted to supersede the W.P.P.D.A. Section 1027 was amended so as to refer to E.R.I.S.A. but no alterations were made in its broad language to limit its scope. *See* 29 U.S.C. § 1031(a)(2)(B)(i) (1976).

Finally, it is obvious that the intention of Congress in enacting the broad language of 18 U.S.C. § 1027 is not affected in any way by the happenstance that three reported cases dealing with criminal prosecutions under 18 U.S.C. § 1027 involved fiduciaries, and not employers. *United States v. Tolkow, supra,* 532 F.2d 853 (2nd Cir.1976) (involving a trustee of a union pension fund); *United States v. Santiago, supra,* 528 F.2d 1130 (2nd Cir.), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976) (involving the president of a local chapter of the AFL–CIO, who was also the trustee of the union welfare fund); and *United States v. McCrae, supra,* 344 F.Supp. 942 (E.D.Pa. 1972) (in which the defendant was the salaried supervisor for two employee benefit funds).

We agree with the language of *Central States, Southeast and Southwest Areas Pension Fund v. CRST, Inc.,* 641 F.2d 616 (8th Cir.1981), which suggests that employers are covered by 18 U.S.C. § 1027. Although *CRST* involved the right of some pension funds to inspect certain employment and earning records held by an employer, the court noted that "criminal sanctions are also available in the event an employer knowingly fails to disclose or conceals facts required by ERISA to be published or certified to the administrator of an employee benefit or pension plan." *Id.* at 619 n. 1. The court cited 18 U.S.C. § 1027. *Id.*

### III

Appellants assert that District Judge James P. Churchill committed reversible error in failing to instruct the jury that some degree of criminal intent was necessary in order to violate 18 U.S.C. § 1027. Section 1027 imposes criminal liability upon one who makes "any false statement or representation of fact, *knowing* it to be false, or

*knowingly* conceals, covers up, or fails to disclose any fact the disclosure of which is required by [ERISA]. . . . " (Emphasis added.) At the trial, appellants contended that this is a specific intent crime and requested a standard specific intent instruction, stating basically that appellants had to intend to violate the law in order to be convicted. After a lengthy discussion with the attorneys, and over defense objections, Judge Churchill decided not to use either of the terms "specific intent" or "general intent" in the instruction on § 1027. Instead, he instructed on the specific mental state referred to in the statute—the concept of an act done "knowingly." The instruction given to the jury on this point is set forth in footnote 1 below.[1]

The thrust of the argument of appellants is that the instruction on the term "knowingly" did not constitute an instruction on criminal intent. They claim, in effect, that the District Judge was required to recite a standard instruction of the term "specific intent," or at least "general intent," in order to inform the jury properly of the mental state required by § 1027.

We hold that the instructions given by District Judge Churchill sufficiently informed the jury of the mens rea required for a conviction under 18 U.S.C. § 1027. We agree with the holding in *United States v. Tolkow, supra,* 532 F.2d 853, 858 (2nd Cir.1976), that a specific intent to do what the law forbids is not required for a violation of § 1027. *See also* Annotation, "Criminal Liability under 18 USCS § 1027 As To Documents Required By Pension Reform Act," 34 A.L.R.Fed. 856 (1977). In *Tolkow,* the Second Circuit stated that the term "knowingly" in § 1027 requires only "proof of a voluntary conscious failure to

disclose without ground for believing that such non-disclosure is lawful, or with reckless disregard for whether or not it is lawful." 532 F.2d at 828. In light of this holding, it was not error for the District Court in the present case to deny appellants' request for a specific intent instruction.

Nor was it error for the court to deny appellants' request for an instruction on the term "general intent." A court may properly instruct the jury about the necessary mens rea without resorting to the words "specific intent" or "general intent." *United States v. Arambasich,* 597 F.2d 609, 612 (7th Cir.1979). *See also United States v. Gregg,* 612 F.2d 43, 50 (2nd Cir.1979) (stating that "[a]lthough the charge given by the district court here did not include in haec verba the words 'specific intent,' we hold that the charge, read in its entirety, [citation omitted], was sufficient to instruct the jury as to the *mens rea* necessary for conviction"). It is sufficient to define the precise mental state required by the statute. *United States v. Tolkow, supra,* 532 F.2d at 858.

In the present case the instruction of District Judge Churchill was centered around the particular mens rea referred to in § 1027. It also encompassed the major defense offered by appellants, that they were not aware of the falsity of the contents of the documents in question, by indicating that "[a]n act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident . . . ." We note that the instruction was similar to the one given by the trial court in *Tolkow* and upheld by the Second Circuit. *See Tolkow,* 532 F.2d at 859.

---

1. The word "knowingly" is used in defining the third element of the offense.

An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

An omission or a failure to act is "knowingly" done if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" is to insure that no one will be convicted of an omission, or failure to act, due to mistake, or accident, or other innocent reason.

A statement or representation is "false" within the meaning of this statute, if untrue when made, and then known to be untrue (by the person making it or causing it to be made) or made with reckless indifference as to its truth or falsity or with a conscious purpose to avoid learning the truth.

We find no reversible error in the charge of District Judge Churchill to the jury.

## IV

Appellants each contend that their convictions for conspiracy to make false statements in documents required to be kept by employee welfare and pension funds should be reversed on the theory that a criminal conspiracy cannot exist between a corporation and its officers, acting as agents of the corporation. They rely mainly upon two district court decisions in support of this proposition. *Jagielski v. Package Mach. Co.,* 489 F.Supp. 232 (E.D.Pa.1980) (involving a civil conspiracy claim); and *United States v. Carroll,* 144 F.Supp. 939 (S.D.N.Y. 1956). The reasoning set forth in these cases is that, based on agency principles, the acts of corporate officers or employees become the acts of the corporation; and since a corporation may not conspire with itself, no conspiracy may be found between a corporation and its agents. In addition, appellants cite a number of civil conspiracy cases involving antitrust litigation for a general statement of this theory. *See Tose v. First Pennsylvania Bank, N.A.,* 648 F.2d 879, 893–94 (3rd Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Card v. National Life Ins. Co.,* 603 F.2d 828, 834 (10th Cir.1979); *Spectrofuge Corp. v. Beckman Instruments, Inc.,* 575 F.2d 256, 287 (5th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Poller v. Columbia Broadcasting System, Inc.,* 284 F.2d 599, 603 (D.C.Cir.1960); *Aaron E. Levine & Co. v. Calkraft Paper Co.,* 429 F.Supp. 1039 (E.D.Mich.1976).

■ We hold that in the criminal context a corporation may be convicted of conspiring with its officers. Support for this holding is found in a number of decisions. *See, e.g., United States v. Hartley,* 678 F.2d 961, 970–73 (11th Cir.1982); *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 602–04 (5th Cir.1981); *Novotny v. Great American Federal Savings & Loan Ass'n.,* 584 F.2d 1235, 1256–59 (3rd Cir.1978) (en banc), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). We adhere to the reasoning set forth in *United States v. Hartley,* 678 F.2d at 970:

The difficulty in accepting the theory of intracorporate conspiracy is conceptual. Under elementary agency principles, a corporation is personified through the acts of its agents. Thus, the acts of its agents become the acts of the corporation as a single entity. The conceptual difficulty is easily overcome, however, by acknowledging the underlying purpose for the creation of this fiction—to expand corporate responsibility.

By personifying a corporation, the entity was forced to answer for its negligent acts and to shoulder financial responsibility for them. *See Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 608 (5th Cir.1981). The fiction was never intended to prohibit the imposition of criminal liability by allowing a corporation or its agents to hide behind the identify of the other. We decline to *expand* the fiction only to *limit* corporate responsibility in the context of the criminal conspiracy now before us.

*See also United States v. Wise,* 370 U.S. 405, 417, 82 S.Ct. 1354, 1362, 8 L.Ed.2d 590 (1962) (Harlan, J., concurring) (stating that "the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions. . . .").

Statements made in antitrust cases to the effect that a corporation is incapable of conspiring with its agents generally have been distinguished as limited in application to the concept of "enterprises" found in § 1 of the Sherman Act. *See United States v. Hartley, supra,* 678 F.2d at 971; *Dussouy v. Gulf Coast Inv. Corp., supra,* 660 F.2d at 603.

■ The law views S & Vee as a distinct legal entity, separate from Mr. and Mrs. Vitello. It is, therefore, possible for a conspiracy to exist between these parties. We affirm the conspiracy convictions of all appellants.

## V

Finally, defendant Silverio Vitello claims that the evidence introduced at the trial

was insufficient to support his convictions. He was convicted of one count of knowingly making false statements in an EBCC form sent to the Central States Southeast and Southwest Areas Pension Fund; one count of conspiracy to make false statements in ERISA documents; and one count of mail fraud. All of these charges arose out of his involvement with an August 6, 1979, EBCC form.

█ In reviewing the sufficiency of the Government's proof against Mr. Vitello, all evidence and reasonable inferences must be viewed in the light most favorable to the Government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982); *United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977). The ultimate question is whether a reasonable mind might fairly find guilt beyond a reasonable doubt. *Gibson* at 829. After a careful review of the proof offered against Mr. Vitello, we conclude that the evidence was sufficient to sustain his convictions on all counts.

All other arguments presented by appellants have been considered and found to be without merit.

Affirmed.