UNITED STATES of America,
Appellee,

v.

Angel REYES, Defendant–Appellant.

No. 05–4854–cr.

United States Court of Appeals,
Second Circuit.

June 28, 2007.

Paul J. Angioletti, Staten Island, NY, for Appellant.

Glen G. McGorty, Assistant United States Attorney (Amy Finzi and Celeste L. Koeleveld, Assistant United States Attorneys, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. SONIA SOTOMAYOR, and Hon. RICHARD C. WESLEY, Circuit Judges.

### SUMMARY ORDER

Angel Reyes was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and was sentenced principally to 86 months' imprisonment. On appeal, Reyes argues that: [1] the evidence was insufficient to support his conviction; [2] the district court erred by not instructing the jury that Reyes could not be convicted for conspiring solely with a government agent; [3] the drug quantity used to calculate his sentence was not reasonably foreseeable; [4] the district court erred by not granting a minor role adjustment; [5] the district court erred by not granting an aberrant behavior adjustment; [6] his counsel was ineffective by failing to request a downward departure based on imperfect entrapment; [7] his sentence was substantively unreasonable; [8] the district court erred by instructing the jury that Reyes had a motive to lie when testifying; and [9] judicial fact-finding in sentencing violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

■ *Sufficiency.* "To sustain a conspiracy conviction, the government must present some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir.2004) (internal quotation marks omitted). "To prevail, [Reyes] bears a heavy burden, as our inquiry requires us to ask only whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. . . .

Moreover, the absence of direct evidence establishing [Reyes's] guilt is not dispositive." *Id.* at 544 (citations and internal quotation marks omitted).

■ The government offered evidence sufficient for the jury to infer that Reyes knew of the charged conspiracy and knowingly joined it. Government witness Estella Zuleta testified that: [i] Reyes told Zuleta that he liked to work with cocaine; [ii] Reyes told Zuleta that Reyes's brother would provide money to purchase drugs; [iii] approximately ten days later Zuleta again discussed the drug transaction with Reyes; [iv] Zuleta arranged a meeting between Reyes and Jose Alvear (a government informant posing as a drug supplier); [v] during the meeting Reyes and Alvear discussed drug transactions; and [vi] Reyes called Zuleta when his brother returned to set up the drug transaction. Government witness Alvear testified that: [i] Reyes introduced his brother to Alvear; [ii] Reyes told Alvear that he and his brother engaged in the same drug transactions; and [iii] Reyes, his brother, and Alvear discussed prices and amounts of cocaine. In addition to the witnesses' testimony, the government introduced Reyes's admissions to DEA agents at the time of his arrest and various recorded conversations, which indicated that: [i] Reyes was present during the October 6, 2003 conversation in which his brother and Alvear discussed the transaction; and [ii] Reyes introduced his brother to Alvear for the purpose of engaging in a drug transaction.

■ ■ *Conspiracy Instruction.* Reyes did not request, and the district court did not give, an instruction to the jury that a defendant cannot be convicted of conspiracy for conspiring solely with a government agent. We therefore review for plain error. *See* Fed.R.Crim.P. 30(d), 52(b). Regardless of whether the district

court's failure to give such an instruction was error, it did not affect Reyes's substantial rights, or affect "the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The indictment's inclusion of the phrase "and others known and unknown," which Reyes argues could have been interpreted to refer to the government informants, does not satisfy Reyes's burden of persuasion to show that the outcome of the trial would have been different had the unrequested charge been given. *See United States v. Thomas*, 274 F.3d 655, 668 (2d Cir.2001). The government, defense counsel, and the district court made statements to the jury clearly indicating that the issue was whether Reyes conspired *with his brother* to purchase cocaine from the informants; and as recounted above, there was abundant evidence to support that conclusion.

■ ■ *Drug Quantity.* The jury found that the charged conspiracy involved between five hundred grams and five kilograms of cocaine. Reyes argues that he was not directly involved in the drug transaction and that "no specific drug quantity was foreseeable to [him]"; he principally relies on *United States v. Chalarca*, in which we affirmed a sentence for "the least amount of cocaine that appears in the . . . Drug Quantity Table" based on the district court's finding that the defendant "had no knowledge of what was taking place" during the drug transaction. 95 F.3d 239, 244, 246 (2d Cir.1996). Here, however, there was ample evidence that Reyes knew exactly what was taking place, including evidence that he participated in a conversation regarding the amount, quality, and price of cocaine that his brother wished to purchase. Even if Reyes was not "directly involved" in the drug transaction, *see* U.S.S.G. § 1B1.3 cmt. n.2, the transaction was within the scope of the conspiracy, and the quantity of cocaine attributed to him was foreseeable, *see*

*United States v. Hernandez–Santiago*, 92 F.3d 97, 100 (2d Cir.1996). Reyes introduced his brother to Alvear for the purpose of engaging in a drug transaction and was present during a conversation in which his brother and Alvear discussed a transaction involving between twenty and twenty-five kilograms of cocaine.

■ ■ *Mitigating Role Adjustment.* The district court did not abuse its discretion by refusing to grant Reyes a reduction of offense level based on U.S.S.G. § 3B1.2. *See United States v. Salameh*, 261 F.3d 271, 280 (2d Cir.2001) ("With regard to the fact-sensitive question of whether a defendant merits a mitigating role reduction, we review for abuse of discretion the district court's application of the Guidelines to the circumstances of the particular case before it."). The gravamen of Reyes's argument is that his role was minor compared to that of his brother. But "participation in the offense [is not] measured solely in relation to the co-defendants," and "a deeply involved participant [is not] rewarded with a downward adjustment, just because his co-defendant[ was] even more culpable." *United States v. Neils*, 156 F.3d 382, 383 (2d Cir.1998). Based on the evidence regarding Reyes's role in arranging the transaction and setting up meetings between the participants, the district court's determination that Reyes was not "substantially less culpable than the average participant," U.S.S.G. § 3B1.2 cmt. n.3(A), was not an abuse of discretion.

■ ■ *Aberrant Behavior Adjustment.* Under U.S.S.G. § 5K2.20, a district court may downwardly depart "in an exceptional case," *id.* § 5K2.20(a), where the crime "(1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life," *id.* § 5K2.20(b). But

the departure is not available if the "offense of conviction is a serious drug trafficking offense." *Id.* § 5K2.20(c)(3). Reyes's conspiracy conviction under 21 U.S.C. § 846 was a "serious drug trafficking offense." *See* U.S.S.G. § 5K2.20 cmt. n.1 (" 'Serious drug trafficking offense' means any controlled substance offense under title 21, United States Code, other than simple possession under 21 U.S.C. § 844, that provides for a mandatory minimum term of imprisonment of five years or greater ...."); *see also* 21 U.S.C. § 841(b)(1)(B) (five year mandatory minimum for conspiracy to distribute 500 grams or more of cocaine). In any event, the district court's decision not to apply the departure to the facts of this case was not an abuse of discretion. *See United States v. Bryson,* 163 F.3d 742, 746 (2d Cir.1998). As the court observed, Reyes "engaged in several conversations planning the meeting and waiting for his brother to return from out of the country. So, it was not anything of limited duration." Sentencing Tr. 26, Aug. 11, 2005.

■ ■ *Imperfect Entrapment Departure.* Reyes did not request a downward departure based on "imperfect entrapment"; he argues that his counsel's failure to request the departure constituted ineffective assistance. A departure for imperfect entrapment is based on "conduct by the government that does not give rise to an entrapment defense but that is nonetheless aggressive encouragement of wrongdoing." *United States v. Bala,* 236 F.3d 87, 92 (2d Cir.2000) (internal quotation marks omitted). This departure has no express basis in the Guidelines, but "the policy statement in Section 5K2.12 can reasonably be read to authorize such a departure in appropriate cases." *Id.*

We need not address whether Reyes's counsel's failure to request the departure fell below "an objective standard of reasonableness," *Strickland v. Washington,* 466 U.S. 668, 687–89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Reyes has failed to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. The district court rejected the similar aberrant behavior departure. And under U.S.S.G. § 5K2.12 (the textual source for the imperfect entrapment departure), "[o]rdinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury." Reyes's claim that he was physically attracted to Zuleta and desired a relationship with her does not rise to the level described by § 5K2.12. Additionally, as discussed above, the record is replete with evidence that Reyes and his brother engaged in drug transactions on a regular basis before encountering Zuleta and Alvear.

■ *Substantive Reasonableness.* Reyes argues that his eighty-six month sentence is unreasonable, principally relying on the comparison to his brother's sixty-month sentence. But Reyes's brother's sentence was obtained pursuant to a plea agreement with the government—an agreement to which Reyes was not a party. And we have stated that 18 U.S.C. § 3553(a) "does not require district courts to consider sentencing disparity among co-defendants," because "the primary purpose" of § 3553(a)(6) "was to minimize *nationwide* disparities." *United States v. Wills,* 476 F.3d 103, 110 (2d Cir.2007) (internal quotation marks omitted) (emphasis added).

■ *Instruction Regarding Defendant's Testimony.* Reyes testified on his own behalf at trial. The district court instructed the jury to evaluate Reyes's testimony as follows:

Obviously, the defendant has a deep personal interest in the outcome of this prosecution. This interest creates a motive for false testimony.

■ Reyes did not object to the charge.[1] After trial, this Court issued *United States v. Gaines*, which "denounce[d] any instruction ... that tells a jury that a testifying defendant's interest in the outcome of the case creates a motive to testify falsely." 457 F.3d 238, 246 (2d Cir.2006). Reyes concedes that because he did not object, the instruction should be reviewed for plain error; but he invokes the "modified plain error rule" that we have applied in cases where the error and the failure to object were the result of "a supervening judicial decision that alters a settled rule of law in the circuit." *United States v. Thomas*, 274 F.3d 655, 668 n. 15 (2d Cir. 2001) (internal quotation marks omitted). Under the modified rule, the government bears the burden of showing that a substantial right *has not* been affected by the error. *Id.*

We need not decide whether our modified rule survives the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (holding that error is "plain" if it is plain on appeal regardless of whether it was plain at trial). *See also Thomas*, 274 F.3d at 668 n. 15 (declining to address the "continuing vitality of our modified plain error jurisprudence" in light of *Johnson*). Even assuming that the language regarding a "deep personal interest" and a "motive to testify falsely" was plain error[2] that affected Reyes's "substantial rights," the error did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," and thus does not warrant reversal. *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). As discussed above, the evidence of guilt offered against Reyes was overwhelming.

■ *Judicial Fact-finding.* In a supplemental *pro se* submission, Reyes argues that his sentence is unconstitutional because under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines require the district judge—not the jury—to find facts in determining the sentence, which he claims violates *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The Supreme Court has expressly approved of judicial fact-finding in sentencing, and we are bound by prior Supreme Court precedent. *See, e.g., Harris v. United States*, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); *Jones v.*

---

1. In fact, Reyes affirmatively requested the charge. But for the reasons stated below, we need not decide whether (or to what extent) Reyes's invited error, which generally operates as a waiver of challenge on appeal, *see United States v. Giovanelli*, 464 F.3d 346, 351 (2d Cir.2006), should be excused based on an intervening change in the law.

2. It is questionable whether the charge here at issue is error (plain or otherwise) even under the current law. *Gaines* expressly distinguished prior cases approving of jury instructions that included the "motive to lie" and "deep personal interest" language. 457 F.3d at 250 n. 10. One such case was *United States v. Tolkow*, 532 F.2d 853 (2d Cir.1976), which approved of a charge that is indistinguishable from the one here at issue: it included "motive to lie" and "deep personal interest" language (like the *Gaines* change and the charge here at issue), but did not include an instruction to "scrutinize" the defendant's testimony (which was given in *Gaines* but was not given here). *See id.* at 859 n. 3. *Gaines* did not purport to overrule *Tolkow*, but the strong language in *Gaines* calls into question *Tolkow's* continuing viability. Because we conclude that any error (if error there was) in the charge did not "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), we need not decide whether the time has come to pull the plug on *Tolkow*.

*United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *United States v. Watts,* 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED.**