SUMMARY ORDER
Baldassare Amato appeals from a judgment of conviction entered November 3, 2006, for racketeering conspiracy in violation of 18 U.S.C. § 1962(d), engaging in an illegal gambling enterprise in violation of 18 U.S.C. § 1955, and conspiracy to engage in an illegal gambling enterprise in violation of 18 U.S.C. § 371. His co-defendant, Stephen LoCurto, appeals from a judgment of conviction entered February 23, 2007, for racketeering conspiracy. Both men were sentenced to life imprisonment. The charged criminal enterprise was the Bonanno organized crime family of La Cosa Nostra.
We assume the parties’ familiarity with the facts, proceedings below, and specification of issues on appeal.

LoCivrto

LoCurto first argues that the two predicate acts of narcotics trafficking with *632 which he was charged were not sufficiently related to the charged enterprise. See United States v. Daidone, 471 F.3d 371, 375 (2d Cir.2006) (per curiam) (describing vertical relatedness requirement, which may be satisfied by a showing that predicate acts are related to the activities of the enterprise). In this case, notwithstanding evidence that the Bonanno family did not sanction or encourage narcotics trafficking or receive profits from it, other evidence indicated that (1) Bonanno family members frequently engaged in narcotics trafficking; (2) LoCurto’s trafficking activities involved other family members including his supervisor in the organization; and (3) drug trafficking was a profitable activity for family members. From this proof, the jury could reasonably have found that the Bonanno family tacitly tolerated or encouraged narcotics trafficking activity because it supported family members and kept them available for the accomplishment of enterprise goals.
One of the predicate acts underlying LoCurto’s racketeering conspiracy conviction was the May 1986 murder of Joseph Platia. LoCurto was acquitted of this murder in a New York state court trial. At his federal trial, LoCurto was not allowed to offer transcripts of the testimony of three of his state court witnesses who had since died. Two of these witnesses could offer a purportedly innocent reason for LoCurto’s presence at the murder scene. The other witness was a medical expert who testified that if LoCurto had shot Platia, LoCurto would have had blood stains on his clothing. LoCurto argues that the exclusion of this evidence denied him due process. The testimony does not fall within an exception to the hearsay rule because LoCurto sought to use it against the United States, a party different from New York State, see Fed. R.Evid. 804(b)(1), and there is no proof that the United States effectively controlled the state prosecution, see United States v. Peterson, 100 F.3d 7, 12 (2d Cir.1996). Evidentiary rules do not improperly infringe on a defendant’s right to present a defense “so long as they are not arbitrary or disproportionate to the purposes they are designed to serve.” United States v. Scheffer, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (internal quotation marks omitted). Application of the general rule against hearsay was not arbitrary or disproportionate in this case for two reasons.- First, one general purpose of the rule against hearsay is guarding against unreliable testimony that is not subject to cross-examination. At the state trial, the prosecution was not allowed to cross-examine the purported alibi witnesses on their Bonanno family connections, a subject that would have had considerable impeachment value in a racketeering conspiracy trial. Thus, the government would have been prejudiced by admission of the alibi witnesses’ testimony. Second, it appears that the witnesses were only of marginal value to LoCurto. If the medical expert’s testimony was sound, surely another medical expert could have been procured, and while the alibi witnesses may have been able to offer an innocent reason for LoCurto’s presence at the murder scene, they could do nothing to explain the fact that he was captured near the scene with the murder weapon in his possession.
LoCurto also argues in a pro se brief that the district court erred by refusing to allow him to testify concerning his prior trial and acquittal. There was no error in precluding proof of the acquittal. See United States v. Viserto, 596 F.2d 531, 537 (2d Cir.1979). Further, the district court’s instruction that LoCurto refer to testimony in a prior proceeding rather than in a prior trial did not prejudice LoCurto in any way.
*633 To the extent LoCurto argues that he was denied due process by the government’s lengthy delay in indicting him, his argument fails because he has failed to demonstrate that (1) the delay was a result of government strategy, or (2) he incurred sufficiently severe prejudice. See United States v. Marion, 404 U.S. 307, 324-25, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).
In 1986, the year in which LoCurto murdered Platia, the maximum penalty for a racketeering conspiracy conviction was twenty years’ imprisonment. After the murder but before the narcotics trafficking predicate acts, the statute was amended to provide a maximum sentence of life imprisonment where any of the predicate acts underlying the conviction carried a life sentence. See 18 U.S.C. § 1963(a). Because the only act making LoCurto eligible for a life sentence was the 1986 murder, LoCurto argues that his sentence violates the Ex Post Facto Clause. We reject this argument because LoCurto continued to act in the conspiracy after the effective date of the challenged amendment. See United States v. Minicone, 960 F.2d 1099, 1111 (2d Cir.1992). That is, LoCurto was on notice of the enhanced penalties as of the change in the law, yet he continued as a participant in the racketeering conspiracy.
Next, LoCurto claims ineffective assistance of counsel. In his counseled brief, he challenges trial counsel’s decision to call a medical expert who testified for the prosecution in the state trial as well as trial counsel’s failure to obtain and offer LoCurto’s tax returns. We agree with the district court that the overwhelming evidence against LoCurto precludes him from showing prejudice as required in an ineffective assistance of counsel claim. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In his pro se brief, LoCurto contends that the court should have relieved his counsel based on complaints he made to the court. We review the district court’s action on a motion to relieve counsel for abuse of discretion. United States v. Doe, 272 F.3d 116, 122-23 (2d Cir.2001). The factors to be considered are:
(1) whether defendant made a timely motion requesting new counsel; (2) whether the trial court adequately inquired into the matter; ... (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense; [and(4) ] whether the defendant substantially and unjustifiably contributed to the breakdown in communication.
Id. (internal quotation marks omitted). LoCurto did not actually ask for new counsel until July 5, 2006, after the defense had rested. Therefore, his request was not timely. Further, although Judge Garaufis did not appoint new counsel for summations, he did appoint new counsel for sentencing. LoCurto’s earlier communications concerning his then attorney did not request that the attorney be relieved. On March 14, 2006, he wrote to the court complaining of long gaps between visits and communications by his then attorney. However, he also said that he had been helped a great deal by an attorney covering for Batchelder. The letter neither requested that LoCurto’s then attorney be relieved or set forth an adequate basis for relieving him. On June 29, 2006, LoCurto again wrote to the court. This time he complained that defense counsel had called the state’s medical expert from the prior trial over LoCurto’s objection and asked that, in the interest of fair play, the court admit the testimony of LoCurto’s state court expert. The district court read LoCurto’s letter into the record, and then defense counsel explained his tactical reasons for calling the state prosecution’s medical expert as his witness. The district *634 court then reiterated its ruling that LoCurto would not be able to introduce a transcript of his state court expert’s testimony. Based on these circumstances, we find no abuse of discretion in the state court’s rulings.
Finally, LoCurto argues that the district court committed plain error by singling him out as an interested -witness who had a motive to lie. At the time that the district court gave its charge, such instructions were appropriate under the law of this circuit. See United States v. Tolkow, 532 F.2d 853, 859 & n. 3 (2d Cir.1976). However, we subsequently overruled Tolkow and held that “it is error to instruct the jury that a defendant’s interest in the outcome of the case creates a motive to testify falsely.” United States v. Brutus, 505 F.3d 80, 87 (2d Cir.2007). LoCurto concedes that he did not object to the charge at trial and that his claim can be reviewed only for plain error. See Fed. R.Crim.P. 52(b). Even if the defendant demonstrates an error that is plain, we will reverse only if the error affected substantial rights and “the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.” United States v. Bruno, 383 F.3d 65, 78 (2d Cir.2004) (internal quotation marks omitted). Because LoCurto’s testimony that he was not a member of the Bonanno family and that he just happened on the Platia murder scene and picked up the murder weapon was inherently incredible, we do not believe that the district court’s charge prejudiced LoCurto or that it reflected adversely on the fairness, integrity or public reputation of judicial proceedings.
We therefore affirm LoCurto’s conviction and his sentence.

Amato.

Amato’s contention that the court should have (1) charged the jury that it was to be anonymous and partially sequestered because there was a concern that organized crime figures might harm them and (2) asked questions designed to elicit any fears that the jury might have after being so instructed lacks merit. We previously have approved an instruction in an organized crime family case that was very similar to the one Judge Garaufis actually gave on this issue. See United States v. Locascio, 6 F.3d 924, 946-47 (2d Cir.1993). In addition, Amato has not shown that the district court abused its broad discretion in deciding whether to ask questions that he suggested. See United States v. Kyles, 40 F.3d 519, 524 (2d Cir.1994).
We have reviewed Amato’s claims concerning various evidentiary rulings and find no abuse of discretion or denial of due process.
Amato asks that we review a sealed submission that the district court reviewed immediately prior to the testimony of Anthony Tabbita to determine whether it is properly viewed as Brady or Giglio material. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Having reviewed both the material reviewed by the district court and the materials underlying the submission to the district court, we agree with the district court that there was no reasonable probability that the materials underlying the sealed submission would have affected the outcome of the trial. See Wood v. Bartholomew, 516 U.S. 1, 6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995) (per curiam). Therefore, there was no error in the district court’s ruling. We caution, however, that it would have been better practice for the government to have submitted for review the underlying materials rather than its summary of those materials.
Next, Amato objects to the district court’s refusal to charge that with respect to the racketeering conspiracy, the “defen *635 dant must have agreed that at least one of these racketeering acts would be committed after January 20,1999.” There was no error because the requested charge was legally incorrect. “A [racketeering] conspiracy ... is presumed to exist until there has been an affirmative showing that it has been terminated; and its members continue to be conspirators until there has been an affirmative showing that they have withdrawn.” Bruno, 383 F.3d at 81 n. 10 (internal quotation marks and brackets omitted).
Finally, in his rebuttal summation, the Assistant United States Attorney inaccurately claimed that a co-conspirator was incarcerated with Amato. Despite objection, the jury was not charged that this claim was a misstatement although the court did instruct the jury that arguments were not evidence. The government did not repeat its claim and turned to another line of argument. Because the misstatement was an aberration and the court took curative measures, reversal is not merited. See United States v. Melendez, 57 F.3d 238, 241-42 (2d Cir.1995).
We, therefore, affirm Amato’s conviction.