**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James M. BARTKUS,
Defendant-Appellant.**

**No. 86–3200.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 20, 1987.

Decided April 20, 1987.

Rehearing and Rehearing En Banc
Denied June 2, 1987.

Donald N. Krosin (argued), Federal Public Defender, Cleveland, Ohio, for defendant-appellant.

Joseph R. Wilson, Asst. U.S. Atty., Michael T. Rae, Cleveland, Ohio, Rangeley Wallace (argued), Washington, D.C., for plaintiff-appellee.

Before KEITH, KRUPANSKY and GUY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Defendant-appellant James M. Bartkus (Bartkus) appealed from his jury conviction pursuant to 18 U.S.C. § 1027.

At all times relevant to the present controversy, Bartkus was employed as the Office Manager of Excavating, Building Material, Construction Drivers, Race Track Employees, Manufacturing, Processing, Assembling and Installer's Employee's Local 436 of the International Brotherhood of Teamsters (the union). As an employee of the union, Bartkus was entitled to health insurance benefits for himself and his dependents payable by the Teamsters Local 436 Welfare Fund (the fund).

Bartkus was married to Mary Lou Bartkus (Mary Lou). The record disclosed that Mary Lou had been an employee of the fund prior to her marriage to Bartkus. At the time of Mary Lou's employment with the fund, it was operated as a "reimbursement fund" which paid benefits to employees without regard to collateral source payments from other insurers. In May of 1979, Mary Lou was employed by the Diamond Shamrock Corporation (Diamond Shamrock). By virtue of her employment with Diamond Shamrock, she qualified for health insurance benefits payable through the Prudential Insurance Company (Prudential).

On June 1, 1980, the fund adopted a "coordination of benefits" policy as a cost saving measure. Pursuant to the "coordination of benefits" policy, Bartkus was required to initially seek payment for Mary Lou's medical expenses from Prudential. After Prudential exhausted the limits of its coverage, the fund would provide supplemental payments to satisfy any outstanding unpaid balance. A general mailing to all employees covered by the fund notified them of the adoption of the "coordination of benefits" policy.

On July 30, 1980, Mary Lou gave birth to a baby at St. John's Hospital in Cleveland, Ohio. When she was admitted to the hospital, Bartkus informed the hospital that she was employed by Diamond Shamrock and insured by Prudential. He also authorized assignment of insurance benefits directly from Prudential to St. John's Hospital. On August 3, 1980, Mary Lou executed a St. John's Hospital form which confirmed that she had health insurance coverage through Prudential. Accordingly, on August 29, and September 23, 1980, Prudential paid St. John's Hospital for the totality of medical services rendered to Mary Lou and the baby.

In early September, 1980, Bartkus submitted a copy of the St. John's statement for medical expenses to the fund and requested reimbursement. The copy of the hospital statement had been altered to delete all references to Mary Lou's employment with Diamond Shamrock and her insurance coverage with Prudential resulting therefrom.

Upon receipt of the hospital's statement, Debbie Hanson (Hanson), who processed the claim informed David Kerr (Kerr), the director of the fund, that she had been advised that Mary Lou was employed at Diamond Shamrock which would require the Bartkus claim to be coordinated with the Diamond Shamrock health insurance coverage. Kerr instructed Hanson to telephone the hospital to determine if Mary Lou's Diamond Shamrock health insurance policy had provided coverage for the medical costs incurred. After Hanson informed him that Prudential had satisfied the entire amount of Mary Lou's hospitalization, Kerr instructed Hanson to deny the Bartkus claim.

On September 10, 1980, Bartkus confronted Kerr about the denial of his claim. Although Kerr informed Bartkus that he had been notified by the hospital that it had received full payment from Prudential, Bartkus insisted that he also be paid from the fund. Shortly thereafter, Bartkus returned to Kerr's office with Sam Busacca (Busacca), the president of the Union and the Chairman of the Board of the fund. Kerr objected to Busacca's direction that he pay the Bartkus claim, stating that it had already been satisfied by Prudential and that the entire office knew that Bartkus had received the benefits of the Prudential insurance payments. Busacca nevertheless instructed Kerr to supply

Bartkus with a "coordination of benefits" form.

Bartkus executed the form which falsely attested that Mary Lou was not employed and denied insurance coverage through any other employer. The "coordination of benefits" form incorporated the following acknowledgement:

> I understand that according to regulations of Local 436 Welfare Fund, I am not entitled to any benefits payable through my spouse's insurance and if payment is made by Local 436 Welfare Fund due to my withholding information I am liable for any such overpayment and will be made to repay the Fund in full.

After Bartkus completed the form, Busacca ordered Kerr to pay the claim. Bartkus thereafter received payment from the fund in direct contravention of its "coordination of benefits" policy.

On August 1, 1985, a federal grand jury returned a three count indictment charging both Bartkus and Mary Lou with (1) conspiracy to embezzle moneys from the fund in violation of 18 U.S.C. § 371; (2) theft or embezzlement from an employee benefit plan in violation of 18 U.S.C. §§ 644; and (3) making false statements and concealing facts in documents required to be kept under ERISA in violation of 18 U.S.C. §§ 1027. The jury acquitted Mary Lou on all counts. Bartkus was convicted on the third court of the indictment for falisfying and concealing facts on ERISA mandated forms in violation of 18 U.S.C. §§ 1027. He was acquitted on all other charges. The district court placed Bartkus on probation for a three year period, conditioned upon his payment of restitution in the amount of $3,463.00. This appeal followed.

■ On appeal, Bartkus charged that the district court erred in submitting his case to the jury because, as a matter of law, he could not be convicted under 18 U.S.C. § 1027 which provides:

> Whoever, in any document required by title I of the Employee Retirement Income Security Act of 1974 (as amended from time to time) to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact the disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined no more than $10,000, or imprisoned not more than five years, or both.

Bartkus contended that 18 U.S.C. § 1027 could not be utilized to prosecute fund participants. However, as this court noted in *United States v. S. & Vee Cartage Co., Inc.*, 704 F.2d 914, 916 (6th Cir.), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983), the statute "provides in broad language, unequivocally and without limitation, that '[w]hoever' knowingly makes any false statement or conceals facts in any documents required by Title I of the Employee Retirement Income Security Act of 1974 (E.R.I.S.A.) to be published, or kept by an employee benefit plan or certified to the administrator of any such plan, may be held criminally culpable." In *S & Vee Cartage*, this circuit concluded that because the broadly worded statute did not differentiate between employers and fiduciaries, both could be prosecuted for violating 18 U.S.C. § 1027. Likewise, the statute does not provide any language indicating that fund participants are excluded from its broad sweep. Accordingly, this court concludes that the conduct of fund participants is within the ambit of the statute.

■ Bartkus next argued that he could not be convicted of a violation of 18 U.S.C. § 1027 because neither the altered hospital statement which falsely represented that the fund was primarily liable for hospital charges nor the "coordination of benefits" form which falsely asserted that Mary Lou was not employed was required to be "kept as a part of the records of any employee welfare benefit plan or employee pension

benefit plan" under Title I of ERISA. The prosecution charged that both documents were required to be retained as documentation for verifying the accuracy and completeness of the financial statements which the fund was required to file pursuant to 29 U.S.C. §§ 1023 and 1024.

Under 29 U.S.C. § 1023, an employee welfare benefit plan is required to publish an annual report incorporating a financial statement which has been audited by a qualified public accountant. 29 U.S.C. § 1027 further provides that "[e]very person subject to a requirement to file any description or report ... shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions, and shall keep such records for a period of not less than six years...."

Upon consideration of the record herein, this court concludes that the documents at issue in the present case were required to be retained under Title I of ERISA for the purpose of verifying the accuracy and completeness of the financial reports which the fund was required to file under 29 U.S.C. § 1023 and 1024. The hospital invoice for medical services qualified as a "receipt" within the meaning of 29 U.S.C. § 1027. In addition, the "coordination of benefits" form provided essential information for verifying Bartkus' eligibility to receive payments from the fund for Mary Lou's hospital charges. *See S & Vee Cartage*, 704 F.2d at 917–18.

Accordingly, for the reasons stated above, the judgment of the district court is hereby AFFIRMED.