**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Lissette Christina NUKIDA,
Defendant–Appellee.**

No. 92–50234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1993.

Decided Oct. 26, 1993.

Mark D. Larsen, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.

Marcia J. Brewer, Los Angeles, CA, for defendant-appellee.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

WALLACE, Chief Judge:

The government appeals from a judgment of the district court dismissing five counts of a sixteen count indictment charging that Nukida tampered with consumer products

affecting interstate commerce, in violation of 18 U.S.C. § 1365(a). In granting Nukida's Federal Rule of Criminal Procedure 12(b) motion to dismiss, the district court concluded that the products allegedly tampered with did not then affect interstate commerce, and therefore it lacked subject matter jurisdiction. The government contends the district court exceeded its authority by ruling on the interstate commerce element prior to trial. Nukida counters that the government has waived this argument by failing to raise it in the trial court. The district court initially exercised jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the government's timely interlocutory appeal pursuant to 18 U.S.C. § 3731. We reverse and remand.

## I

Casa Colina Peninsula Rehabilitation Center (Casa Colina) is a medical care facility in Lomita, California. It provides inpatient treatment for patients who require intravenous antibiotic medication, as well as for patients suffering from brain tumors. Conn, Myracks, and Thomas were patients at Casa Colina on February 7 and 8, 1991. All three were being administered intravenous medications which Casa Colina had received from Commerce Advanced Pharmacy Services (pharmacy) in Tujunga, California. The pharmacy had placed substances in plastic bags (I.V. bags) used at Casa Colina, combining drugs it received from various out-of-state suppliers with a dilutant, also manufactured outside California.

Nukida was on duty as a registered nurse at Casa Colina from the evening of February 7 to the morning of February 8, 1991. Early in the morning of February 8, Nukida administered intravenous solutions to the three patients. Hours later, around 8:00 a.m., other staff members at Casa Colina observed that Conn and Myracks were flushed, sweating profusely, moaning, and confused. After they both lost consciousness, Conn and Myracks were rushed to a local hospital where doctors discovered that they had dangerously low levels of blood sugar, a life-threatening condition if untreated. Both Conn and Myracks responded to treatment and recovered.

Upon learning of the diagnosis, Casa Colina staff members examined other patients and learned that Thomas also was suffering from low blood sugar.

The staff members collected the five I.V. bags used for the three patients, immediately halted the administration of intravenous medications throughout the facility, and ordered replacement I.V. bags from a supplier other than the pharmacy. The five bags were tested by the Food and Drug Administration (FDA) at its laboratory in Philadelphia, Pennsylvania. Samples of the medication in the four bags used for Conn and Myracks tested positive for insulin contamination; tests on the bag used for Thomas proved inconclusive.

All of the other I.V. bags at Casa Colina and the tubing used to administer intravenous medications to Conn and Myracks were delivered to the pharmacy where they were inspected by Lum. Lum contacted each out-of-state manufacturer of the drugs to alert them of the situation. Several of the manufacturers conducted internal investigations and testing to determine whether there was evidence of product tampering at their end of the supply chain.

During her investigation, Lum noticed that eleven other I.V. bags were leaking through puncture holes too small to be noticed unless pressure was applied to the bags. The leaking bags, which had been stored in a supply room at Casa Colina, contained medications designated for Conn and Myracks. Lum discovered that an insulin syringe made holes identical to those in the leaking I.V. bags. The FDA examined the eleven bags at its Philadelphia laboratory, and all of them tested positive for insulin. In Washington, D.C., the Federal Bureau of Investigation (FBI) examined the tubing used to administer the intravenous medication to Conn and Myracks; it too had puncture holes.

FBI Special Agent Deppa questioned Nukida three times. After failing a lie detector test during the third interview, Nukida stated that she had intentionally injected insulin into some of the I.V. tubing used for Thomas, Conn, and Myracks. Nukida also stated that she had injected insulin into two bags of

intravenous medication in Casa Colina's storeroom. Subsequently, Nukida was indicted on 16 counts of tampering with consumer products affecting interstate commerce, a violation of 18 U.S.C. § 1365(a).

After being charged, Nukida filed a motion pursuant to Federal Rule of Criminal Procedure 12(b) seeking dismissal of the indictment. Nukida argued that her acts did not affect interstate commerce, the charges in the indictment failed to state an offense, and therefore the district court lacked subject matter jurisdiction over the case. After hearing argument and considering declarations filed by the parties, the district court dismissed counts one through five, which alleged that Nukida had tampered with medications in I.V. bags connected to the patients. The district court held that when the I.V. bags had been connected to the patients' chest catheters, the medications left the stream of commerce. Therefore, Nukida's injection of insulin into the patients' I.V. tubes which carried the medications did not affect interstate commerce.

The district court left counts 6 through 16 undisturbed. These counts charged Nukida with injecting insulin into I.V. bags stored at Casa Colina. The court held that the 11 contaminated bags in the storeroom remained in the stream of commerce because they had not yet been attached to patients at the time Nukida allegedly contaminated them with insulin.

The government moved for reconsideration, contending that the district court erred in determining that the medications had left the flow of interstate commerce at the time of contamination. The government also argued that the court had mistakenly disregarded the effects on interstate commerce caused by Nukida's alleged actions, including the various investigations and testing necessitated by the contamination. After a second hearing, the district court denied the government's motion, finding that the medication in the five I.V. bags "had reached their ultimate destination and were being consumed at the time the tampering occurred. Therefore, at that time the consumer products were neither in nor affecting interstate commerce."

The district court rejected the government's argument regarding the effects on interstate commerce on two grounds. First, the court held that effects which occur later in time than the tampering are not relevant to whether the products in question affect commerce within the meaning of 18 U.S.C. § 1365(a). Even if subsequent effects are relevant, the court reasoned that the effects alleged by the government in this case were insufficiently substantial.

## II

The government contends that Nukida's motion was premature. The government argues that whether the contaminated medications affected interstate commerce constitutes an element of the charged offense which should be decided by the jury. Therefore, resolution of that question must await trial of the general issue, and is not cognizable as a Rule 12(b) motion. The district court, however, treated the entire issue as a question of subject matter jurisdiction. Unfortunately, the district court never received the government's present argument. The government failed to object, and never apprised the court that it may have been invading the province of the factfinder by entertaining Nukida's challenge to the interstate commerce element before trial.

▪ In two brief paragraphs of her brief, Nukida contends that it is now too late for the government to argue that the district court improperly decided this question in ruling upon a pretrial motion. Whether the government waived its argument by not raising it until appeal presents an issue to be decided by us in the first instance.

▪ Nukida relies on but one case, *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988), which dealt with the failure of the government to object to the submission of facts by Risk and the district court's use of the facts in a Rule 12(b)(6) proceeding. This case is different. Here, the question is one of jurisdiction: whether the district court was correct in deciding before trial that it had no subject matter jurisdiction. Jurisdictional issues will ordinarily be considered on appeal regardless whether they are raised in

the trial court. *Albrecht v. Lund,* 845 F.2d 193, 194 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir.1988).

Even if the question were not within our jurisdiction exception, it clearly falls within the exception which allows consideration of an issue raised initially on appeal if "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *United States v. Carlson,* 900 F.2d 1346, 1349 (9th Cir.1990). Whether the district court exceeded its authority in ruling upon Nukida's Rule 12(b) motion presents a purely legal question. There is no need for the development of additional facts and, because Nukida has addressed the government's legal argument in her appellate brief, there is no prejudice to Nukida resulting from the government's failure to raise the issue in the district court. We exercise our discretion to consider it.

### III

■ We turn now to the merits of the government's challenge. Whether the district court exceeded its authority in deciding the interstate commerce question before trial raises a question of law and is therefore reviewed de novo. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A.

■ Rule 12(b) of the Federal Rules of Criminal Procedure permits consideration of any defense "which is capable of determination without the trial of the general issue." A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir.) (*Shortt*), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). Although the court may make preliminary findings of fact necessary to decide the legal questions presented by the motion, the court may not "invade the province of the ultimate finder of fact." *Id.* (internal quotation and citation omitted). We stated:

As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Under this standard, the district court must decide the issue ... if it is entirely segregable from the evidence to be presented at trial. If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.

*Id.* (internal quotations and citations omitted).

■ Generally, Rule 12(b) motions are appropriate to consider "such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, [and] lack of jurisdiction." *United States v. Smith,* 866 F.2d 1092, 1096 n. 3 (9th Cir.1989) (*Smith*). Nukida brought the Rule 12(b) motion to challenge the subject matter jurisdiction of the court, arguing that her tampering did not affect commerce. The district court analyzed the issue as one involving its jurisdiction to hear her case. But a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense. *See id.* at 1096 n. 5; *United States v. Snyder,* 428 F.2d 520, 522 (9th Cir.) (*Snyder*), *cert. denied,* 400 U.S. 903, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). The face of the statute reveals that one of the material elements of the offense defined by section 1365 is that the tampered product affect interstate commerce. *Cf. United States v. Alvarez,* 972 F.2d 1000, 1003 (9th Cir.1992) (observing that a firearm has traveled in or affected interstate commerce is an element of the offense prohibited by 18 U.S.C. § 922(g), which the government must prove beyond reasonable doubt), *cert. denied,* —— U.S. ——, 113 S.Ct. 1427, 122 L.Ed.2d 795 (1993). Inasmuch as Nukida's arguments before the district court challenged the government's ability to prove that her actions affected commerce, her motion to dismiss amounted to a premature challenge to the sufficiency of the government's evi-

**670**

dence tending to prove a material element of the offense defined by section 1365.

■ The Eleventh Circuit faced a similar issue in *United States v. Ayarza–Garcia*, 819 F.2d 1043 (11th Cir.) (*Ayarza–Garcia*), *cert. denied*, 484 U.S. 969, 108 S.Ct. 465, 98 L.Ed.2d 404 (1987). The defendants had been charged with conspiracy to possess and possession of marijuana on the high seas with intent to distribute in violation of 21 U.S.C. §§ 955a(a), 955c and 18 U.S.C. § 2. *Id.* at 1045–46. An element of the offense prohibited by this section is that the vessel in question must be "subject to the jurisdiction of the United States." 21 U.S.C. § 955a(a). A vessel registered in another country is nonetheless subject to United States jurisdiction if it is "assimilated to statelessness." *Ayarza–Garcia*, 819 F.2d at 1046. The district court had denied the defendants' Rule 12(b) motion to dismiss for lack of subject matter jurisdiction. *Id.* On appeal, the defendants challenged the district court's holding that "the jurisdictional issue was inappropriate for determination by pretrial motion," arguing that the issue of jurisdiction was a question of law to be decided by the court. *Id.* at 1048.

■ The court of appeals rejected this argument, holding that "when a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial. This is clearly the case when the jurisdictional requirement is also a substantive element of the offense charged." *Id.* After observing that "[s]ection 955a(a) makes the jurisdictional element one of the material elements of the crime of possession of a controlled substance with intent to distribute on the high seas," *id.*, the court concluded that it would be inappropriate to consider such a question on a Rule 12(b) motion. Instead, "[t]he proper procedure for raising [a] challenge to the sufficiency of the government's evidence to support a finding of assimilation to statelessness [is] by a motion for judgment of acquittal under Rule 29 and not by a pretrial motion to dismiss." *Id.* at 1048–49.

The Eleventh Circuit's reasoning is persuasive. Reliance on Rule 29 instead of a pretrial motion to dismiss may be less effi-

cient, because Rule 12 serves to help conserve "judicial resources by facilitating the disposition of cases without trial." *Smith*, 866 F.2d at 1097. However, the unavailability of Rule 12 in determination of general issues of guilt or innocence, as in *Ayarza–Garcia*, helps ensure that the respective provinces of the judge and jury are respected, *Shortt*, 785 F.2d at 1452, and that the facts are fully developed before disposition of the case. *See United States v. Williams*, 644 F.2d 950, 952–53 (2d Cir.1981). Rule 29, though, remains of great value as a "judgment for acquittal ... is an important safeguard to the defendant. It tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." 2 Charles A. Wright, Federal Practice and Procedure § 461, at 637–38 (2d ed. 1982).

■ Having adopted the reasoning of *Ayarza–Garcia*, the only question is whether affecting interstate commerce, the jurisdictional element in section 1365, is, like the statelessness of a vessel on the high seas, a factual determination "intermeshed with questions going to the merits." *Ayarza–Garcia*, 819 F.2d at 1048. We now address that question.

### B.

■ As the district court recognized, there are two ways to demonstrate the requisite nexus with interstate commerce. First, the government may prove that the medications were "in commerce" when the alleged tampering occurred. *See McLain v. Real Estate Bd.*, 444 U.S. 232, 242, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980) (*McLain*) (discussing interstate commerce element of Sherman Act). Second, the government may prove that the tampering had an actual economic impact on interstate commerce. *See United States v. Montoya*, 945 F.2d 1068, 1074 (9th Cir.1991) (*Montoya*) ("[a]n effect on interstate commerce is established by proof of an actual impact, however small"), *abrogated in nonpertinent part by McCormick v. United States*, 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991). We must

decide whether either of these theories involve factual determinations that "fall within the province of the ultimate finder of fact and must be deferred." *Shortt*, 785 F.2d at 1452.

Addressing the first theory, the district court ruled as a matter of law that the intravenous solutions had exited the stream of commerce when the I.V. bags containing them were attached via tubing to the patients' chest catheters. In so ruling, the district court relied exclusively on the legislative history of the statute which, the court concluded, demonstrated that the intravenous solutions were no longer "in commerce" and had lost their interstate character. Although exploring the legislative materials to interpret the interstate commerce requirement of section 1365 is tempting, we conclude that the wiser source is to examine other federal criminal statutes which contain similar provisions. Indeed, the legislative history of section 1365 itself states that the "scope of Federal jurisdiction ... generally parallels that used in other sections of title 18." H.R.Rep. No. 93, 98th Cong., 1st Sess. 4 (1983), *reprinted in* 1983 U.S.C.C.A.N. 1257, 1259. By reviewing the court interpretation of these similar statutes, we avail ourselves of judicial wisdom and obviate unfortunate and unnecessary inconsistencies.

In a prosecution under 18 U.S.C. § 922(j), involving stolen firearms, we held that no precise rule exists "for determining when an interstate movement has come to an end. The question is one of fact, to be determined by the jury." *United States v. Jones*, 564 F.2d 1315, 1317 (9th Cir.1977); *see also United States v. Cyphers*, 604 F.2d 635, 636 (9th Cir.1979) ("It is well settled in this Circuit that the determination of the interstate commerce character of stolen articles in an 18 U.S.C. § 2315 case is a question of fact for the trier of fact."); *United States v. Licavoli*, 604 F.2d 613, 624 (9th Cir.1979) ("Whether the interstate movement of a stolen article has come to an end generally is a question of fact, to be determined by the jury."), *cert. denied*, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). This rule is similar to the law of our sister circuits. *See, e.g., United States v. Smith*, 794 F.2d 1333, 1336 (8th Cir.) (for purposes of 18 U.S.C. § 2315,

"[w]hether the [stock] certificates were moving in, or were a part of, interstate commerce is a question of fact for the jury"), *cert. denied*, 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); *United States v. Tobin*, 576 F.2d 687, 692 (5th Cir.) (whether item once moving in interstate commerce has come to rest and lost its interstate character or yet retains its interstate character is question of fact for jury), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978); *accord United States v. Kapp*, 781 F.2d 1008, 1011 (3d Cir.), *cert. denied*, 479 U.S. 821, 107 S.Ct. 87, 93 L.Ed.2d 40 (1986); *United States v. Ollary*, 466 F.2d 545, 546 (4th Cir.1972); *United States v. Stillwell*, 854 F.2d 1045, 1048 (7th Cir.), *cert. denied*, 488 U.S. 973, 109 S.Ct. 508, 102 L.Ed.2d 544 (1988); *United States v. Luman*, 624 F.2d 152, 155 (10th Cir.1980); *United States v. Strauss*, 678 F.2d 886, 894 (11th Cir.), *cert. denied*, 459 U.S. 911, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982). The same rule should apply in prosecutions under section 1365: whether the product at issue, in this case the intravenous solutions, has lost its interstate character is a question of fact for the jury. That the solutions were contained in I.V. bags which had already been attached to the patients when the tampering took place is surely relevant, but the district court jumped the gun by attempting to resolve this factual issue before trial. *See Shortt*, 785 F.2d at 1452.

As for the second theory, that Nukida's alleged tampering had an economic impact on interstate commerce, the district court made two rulings. First, it found no support in the legislative history for the notion that an economic impact resulting after the tampering suffices to confer federal jurisdiction. The court held as a matter of statutory interpretation that an impact upon interstate commerce occurring after the tampering of a product does not affect commerce within the meaning of section 1365(a). We should look first to the face of the statute itself. Section 1365(a) draws no distinction among effects that occur before, during, or after the tampering; it merely states that the product must affect interstate commerce. The district court erred in relying on legislative history to cloud the meaning of this otherwise clear language. *See Nugget Hy-*

droelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 433 (9th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993). Furthermore, since actual economic impact is sufficient to prove the required nexus to interstate commerce, Montoya, 945 F.2d at 1074, there is no reason to preclude post-tampering economic impact.

■■■ The district court's alternative reason was that any effect on commerce resulting from Nukida's tampering, including the economic impact of the investigations and testing, was not substantial enough to sustain jurisdiction. It is true that a substantial impact on interstate commerce is required to confer Sherman Act jurisdiction, McLain, 444 U.S. at 242, 100 S.Ct. at 509, but a substantial impact is not universally required. In Perez v. United States, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), for example, the Court held that the Commerce Clause authorizes Congress to punish any particular criminal action, even without proof of a relation to interstate commerce, when the activity is part of a "class of activities" determined by Congress to affect interstate commerce. Id. at 151–55, 91 S.Ct. at 1360. The class of activities in question in Perez was loan sharking; in the present case it is tampering with consumer products, but the reasoning of Perez clearly applies. See also United States v. Pascucci, 943 F.2d 1032, 1035 (9th Cir.1991) (government required to establish only de minimus effect on interstate commerce to prove Hobbs Act violation); United States v. Andrini, 685 F.2d 1094, 1095–96 (9th Cir.1982) (de minimus effect on interstate commerce suffices for conviction of malicious destruction of building under 18 U.S.C. § 844(i)); United States v. Bagnariol, 665 F.2d 877, 892 (9th Cir.1981) (minimal effect on interstate commerce satisfies jurisdictional element of RICO violation), cert. denied, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982).

We need not decide the quantum of impact on interstate commerce required under section 1365, however, because it is clear that, whatever the precise level, the determination of whether Nukida's actions resulted in sufficient effects on interstate commerce is essen-

tially factual, and therefore inappropriate for resolution on a pretrial motion to dismiss or on this appeal. See, e.g., Musick v. Burke, 913 F.2d 1390, 1395 (9th Cir.1990) ("Whether the defendant's activities sufficiently affect interstate commerce to create Sherman Act jurisdiction is a highly fact-based question calling for common sense judgment." (internal quotation and citations omitted)); United States v. Suntar Roofing, Inc., 897 F.2d 469, 478 (10th Cir.1990) (approving jury instruction stating that whether interstate commerce is affected is question of fact); United States v. Voss, 787 F.2d 393, 397–98 (8th Cir.) (reversing district court for instruction that prevented jury from making requisite factual findings in support of affecting commerce element of prosecution under 18 U.S.C. § 844(i)), cert. denied, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986). In this case, the government intends to present evidence that as a result of Nukida's alleged tampering, business entities and federal agencies in several states expended resources to track down the source of the insulin contamination. This is not a frivolous position. Regardless of the merits of the district court's substantive determination that these effects were too insubstantial to establish that the tampering affected commerce within the meaning of section 1365(a), the court had no authority to make this factual determination without a trial. See Shortt, 785 F.2d at 1452. These are factual determinations "intermeshed with questions going to the merits." Ayarza–Garcia, 819 F.2d at 1048.

IV

■■■ The affecting interstate commerce issue constitutes a material element of the offense prohibited by 18 U.S.C. § 1365(a), and involves a factual determination going to the general issue of Nukida's guilt or innocence. We therefore hold that the district court exceeded its authority under Rule 12(b) when it considered Nukida's challenge to the sufficiency of the government's evidence concerning the contaminated solutions' relationship to interstate commerce. See Snyder, 428 F.2d at 522 ("A motion to dismiss is not the proper way to raise a [factual] defense."). The proper way for Nukida to challenge the

sufficiency of the government's evidence pertaining to the jurisdictional element of affecting interstate commerce is a motion for acquittal under Rule 29, presented at the close of the government's case-in-chief.

We reverse the district court's dismissal of counts one through five of the indictment and remand for trial. At trial, the government must prove, beyond a reasonable doubt, that the product was "in commerce" when it was tampered with, or that Nukida's alleged tampering affected interstate commerce.

REVERSED and REMANDED.