**UNITED STATES of America, Plaintiff,**

v.

**Santo J. VOLPE, Defendant.**

**No. CR 92–0034 BAC.**

United States District Court, N.D. California.

Sept. 7, 1994.

William Schaefer, Asst. U.S. Atty., San Francisco, CA, for plaintiff.

Robert Breakstone, Landels, Ripley & Diamond, San Francisco, CA, Dominic Gentile, Gentile & Porter, Las Vegas, NV, Jeffrey Steinback, Genson, Steinback, Gillespie & Martin, Chicago, IL, for defendant.

## ORDER

CAULFIELD, District Judge.

This action comes before the court on defendant's motion to dismiss the Second Superseding Indictment. Defendant challenges the legal sufficiency of the ERISA fraud and mail fraud counts in the Second Superseding Indictment. Upon consideration of the materials and arguments presented to the court, Counts 1 through 23 of the Second Superseding Indictment are DISMISSED for failure to charge an offense under 18 U.S.C. Section 1027 (ERISA fraud) and for failing to contain a plain, concise and definite statement of the essential facts constituting the offense.

## BACKGROUND

A. *History Of The Case*

The United States is pursuing Santo Volpe for fraud based on his efforts to obtain group health coverage for people who allegedly were not entitled to the coverage. The prosecutor has adjusted the nature of the case against Volpe several times. With each adjustment, the case has ventured further into the gray areas of the Employee Retirement Income Security Act ("ERISA"). The court reviews the evolution of the case since its inception on January 28, 1992.

The government's version of several core facts has remained unchanged during this case. The following allegations have been consistent: Defendant Santo Volpe was the president of American Beverage Company ("ABC"). During the relevant time period, ABC had no employees and was merely a shell corporation. Volpe caused ABC to apply for and obtain group health coverage for six persons not entitled to coverage by falsely representing that these people were employees of ABC. ABC obtained group health coverage from the Western Employers Manufacturing and Retail Industry Trust Fund ("WET"). WET provided group health care coverage for employees of approximately 200 employers which, like ABC, subscribed to WET. Volpe caused monthly contribution statements listing the number of eligible individuals at ABC and the contributions for them to be sent to WET. In addition to these unchanging facts, there are other facts in the government's case which have varied.

The original Indictment charged ERISA fraud, mail fraud, and aiding and abetting liability. The ERISA fraud counts in the Indictment alleged, *inter alia:* (1) WET was an ERISA plan; (2) the monthly contribution statements for member employers, including ABC, were among the documents required to be kept by WET as part of its records as an ERISA plan; and (3) the monthly contribution statements were documents whose contents were necessary to explain, clarify and check for accuracy and completeness of the Form 5500 (required to be filed by the Administrator of the WET ERISA plan). The mail fraud counts in the first Indictment charged that Volpe fraudulently sought to obtain health coverage for persons not entitled to such coverage under the WET ERISA plan.

Volpe challenged the Indictment, especially the charge that WET was an ERISA plan. As late as mid–1993, the government's position was that "because the Indictment sufficiently alleges that the WET is an employee benefit program, the issue must go to the jury for determination." (Letter dated April 13, 1993 from Assistant United States Attorney ("AUSA") Schaeffer to defendant's counsel Steinback, at p. 4, filed in this case on October 20, 1993 as an attachment to the Mr. Schaeffer's October 19, 1993 letter to the court.) The government's view of the case changed.

The government offered a second version of the case. Under the second version, the government charged that employers who subscribed to WET for the purpose of providing their employees with benefits had established and maintained separate ERISA plans. It was the government's second theory that the subscribing employers set up

separate ERISA plans, not that WET was a single ERISA plan for the subscribing employers. The government also claimed that the monthly contribution statements. were necessary to explain, clarify and check for accuracy and completeness the two Form 5500s (one for 1987 and 1988) actually filed by WET on behalf of some, if not all, of the ERISA plans. (Response Of The United States To Defendant's Reply To Motion To Compel And Supplement To Defense. Hearing, p. 9:20–10:4.) A Superseding Indictment reflecting this second theory of the facts was filed on January 11, 1994.

At the January 14, 1994 hearing on defendant's motion to dismiss, defendant's counsel argued that the mail fraud counts were dependent on the ERISA fraud counts because the mail fraud counts incorporated by reference part of the ERISA fraud allegations. The AUSA responded that the incorporation by reference of part of the ERISA fraud count was a "typographical error," and that what was actually intended was an incorporation by reference of a previous paragraph in the first mail fraud count. The AUSA sought to amend what he described as a "technical mistake in the indictments." The court was unable to determine that the grand jury intended something other than what was stated in the original Indictment and Superseding Indictment, and did not permit the AUSA to make a "technical" amendment.

The United States sought a Second Superseding Indictment. The Second Superseding Indictment was returned on January 18, 1994. The mail fraud allegations were changed to remove the incorporation by reference of the ERISA fraud allegations.

The United States now offers a third theory of its case against Santo Volpe.[1] The United States no longer claims that the two Form 5500s filed by WET were documents required to be filed under ERISA. Those two Form 5500s were filed by mistake. Under the third theory of the case, each of the member employers subscribing to WET *should have filed its own* Form 5500 for each of the two years. The Form 5500s required to be filed under this theory have not yet been filed. It is not proposed as a fact by the government that any member employer subscribing to WET knows that the member employer has its own ERISA plan or knows of an obligation to appoint an ERISA plan Administrator. The United States argues, however, that by signing the WET Subscriber's Agreement, each employer appointed WET as the ERISA plan Administrator for that employer's plan.[2]

## B. *Allegations In The Second Superseding Indictment*

The Second Superseding Indictment charged twenty-three counts of ERISA fraud (18 U.S.C. § 1027). The relevant allegations of the Second Superseding Indictment were: WET provided health care benefits to employees of employers ("member employers") who, having met certain eligibility standards, executed Subscription Agreements with WET. (Second Superseding Indictment, p. 1:23–26.) Eligibility for health care coverage under the WET program was limited to the member employer's employees and their dependents. (*Id.,* p. 1:26–28.) "[M]ember employers who subscribed to [WET] for the purpose of providing their employees with certain benefits, including medical, surgical, and hospital care benefits, established and maintained employee benefit plans subject to [ERISA] ("member employer plans")." .(*Id.,* p. 2:1–7.) The administrator of each member employer plan was required to publish and

---

1. The government's change from the second to third version did not flow from any change in the allegations of the indictments. There was no change in the ERISA fraud allegations between the Superseding Indictment and Second Superseding Indictment.

2. The United States argues that the employer appointed WET as trustee in the form Subscriber's Agreement and that this therefore made WET the ERISA plan Administrator. In the Subscriber's Agreement, the subscriber agrees "to be bound by the terms of the Trust Agreement and Master Policies of Insurance as issued to the Trustees therein named." Nowhere is it stated that WET is the trustee. The only signature other than that of the subscribing employer is a signature of approval by J.D. King Corp. (The role of J.D. King Corp. is not identified.) If WET is the trust, it is unclear how WET could also be the trustee. Nowhere is an ERISA plan, let alone an ERISA plan Administrator, mentioned in the Subscriber's Agreement.

file with the Department of Labor an IRS Form 5500 and to maintain records on matters of which disclosure in the Form 5500 may be verified, explained, clarified, and checked for accuracy and completeness, pursuant to 29 U.S.C. §§ 1023, 1024, and 1027. (Second Superseding Indictment, p. 2:8–13.) "The monthly contribution statements submitted by member employers were documents required to be kept as part of the records of each member employer plan, pursuant to Title I of [ERISA], and were documents whose contents were necessary to explain, clarify and check for accuracy and completeness IRS Forms 5500 required to be published and filed with the United States Department of Labor." (Second Superseding Indictment, p. 3:1–7.) In several months during 1987 and 1988, the defendant made "false statements and representations of fact in the monthly contribution report submitted by [ABC to WET] ... knowing them to be false, and did knowingly conceal, cover up, and fail to disclose facts the disclosure of which was necessary to verify, explain, clarify and check for accuracy and completeness the IRS Forms 5500 required to be published for the fiscal year 1987 [and 1988], in that[ ] the defendant, SANTO VOLPE, listed individuals who were not eligible for coverage" under WET. (*Id.*, p. 3:14–25.) [3]

The Second Superseding Indictment also charged multiple counts of mail fraud under 18 U.S.C. Section 1341. The Second Superseding Indictment charged, in relevant part: Defendant "did willfully devise and intend to devise, and attempt to devise a scheme and artifice to defraud [WET] by means of false and fraudulent pretenses, representations, and promises." (Second Superseding Indictment, p. 26:7–10.) The scheme and artifice to defraud consisted of defendant (a) fraudulently representing to WET that certain individuals were employees of ABC and were therefore eligible for

coverage under WET; (b) submitting monthly contribution statements fraudulently listing certain individuals as eligible for health care benefits under WET; and (c) submitting monthly payments to WET for the individuals fraudulently covered under WET. (*Id.*, p. 26:12–20.) "The scheme and artifice to defraud sought to fraudulently obtain, from [WET], health coverage, at the offered group rate, for individuals who were, in fact, not eligible for coverage." (*Id.*, p. 26:21–24.) Defendant knowingly caused, and aided and abetted in causing, to be mailed to WET the monthly statements and remittance checks for the purpose of executing this scheme or artifice to defraud. (*Id.*, p. 26:27—27:7.)

## DISCUSSION

### A. *Rule 12 Motions*

A defendant may make a pre-trial motion to object to defects in the indictment, including an objection that an indictment fails to charge an offense. Fed.R.Crim.P. 12(b)(2).

In considering a motion to dismiss before trial, the court must be careful not to invade the province of the ultimate finder of fact. This caution does not preclude pre-trial dismissal. If an issue raised in a pretrial motion is entirely segregable from the evidence to be presented at trial, the motion must be decided before trial. *See United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.1986), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). Even if an issue is not entirely segregable from the evidence to be presented at trial, if it does not require review of a substantial portion of that evidence, the court has discretion to consider the motion and rule on it then or defer decision until a later time. *Ibid.* The " 'court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial mo-

---

**3.** Also of interest is what was not contained in the Second Superseding Indictment. First, it was not charged that eligibility for health care coverage under the WET program was limited to ERISA plans. Second, although the Second Superseding Indictment states that the member employers who subscribed to WET established and maintained ERISA plans, it is unclear whether ERISA plans were created by virtue of the sub-

scription to WET and whether WET was in fact an asset in each of the member employer's ERISA plans. Third, the administrator of each of the ERISA plans is not identified, although the government argues that WET was the administrator for each of the plans. Fourth, it is not alleged that each ERISA plan actually did publish and file a Form 5500.

tions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact.' " *Id.,* quoting *United States v. Jones,* 542 F.2d 661, 664 (6th Cir. 1976). The recent decision in *United States v. Nukida,* 8 F.3d 665 (9th Cir.1993) did not change this standard.

The government argues that *Nukida* precludes this court from granting the requested relief.[4] The *Nukida* defendant "challenged the government's ability to prove that her actions affected commerce," so "her motion to dismiss amounted to a premature challenge to the sufficiency of the government's evidence." 8 F.3d 665, 669–70. The government argues that, to the extent Volpe believes the government will be unable to prove any of the elements adequately pled, *Nukida* requires him to challenge the sufficiency of the evidence in a Rule 29 motion at trial. The issue in dispute is whether the indictment adequately pleads the offenses charged. Volpe's argument is that the ERISA fraud and mail fraud counts are legally insufficient, not that the government cannot muster enough evidence to secure convictions on well pled counts. Neither *Nukida* nor any other case prohibits this court from examining the legal sufficiency of the Second Superseding Indictment. It is to this task that the court now turns.

### B. *ERISA Fraud*

1. *Sufficiency Of Detail In The Second Superseding Indictment*

█ An indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1).

An indictment is sufficient to withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge. (*United States v. Bernhardt,* 840 F.2d 1441, 1445 (9th Cir.1988), *cert. denied,* 488 U.S. 954, 109 S.Ct. 389, 102 L.Ed.2d 379 (1988).)

The Second Superseding Indictment in this case does not withstand scrutiny. It is not sufficiently specific to ensure that Volpe will be prosecuted on the basis of the same facts as those presented to the grand jury. That this is an actual, and not merely a hypothetical, problem in this case is shown by the AUSA's own statements. "The testimony before the Grand Jury from the Administrator of the Western Employers Trust established that the information contained in the Volpe submissions were utilized and relied upon in the preparation and filing of the Form 5500 series reports." (Government's letter brief filed January 24, 1994, p. 11.) This statement was made at the time when the government contended that WET was required to and did file one cumulative Form 5500 each year for all the member employers in WET's program. The government has since abandoned that theory and now contends that each of the 200 plans was required to file its own Form 5500. The language of the indictment did not change at all when the government's understanding of the facts changed. If the grand jury returned the Second Superseding Indictment because it was convinced that WET's reliance on ABC's monthly contribution statements (when WET mistakenly filed the Form 5500's) established that the documents were required to be kept by an ERISA plan, the government has impermissibly changed the factual basis for the conclusion already reached by the grand jury. The displeasure voiced by the Su-

---

4. The *Nukida* court did not hold that Rule 12(b) motions were limited to consideration of matters such as former jeopardy, former conviction, former acquittal, statute of limitations, immunity and lack of jurisdiction. These matters were listed in *Nukida* as examples of issues a defendant may raise in a pre-trial motion to dismiss, not the outer limits of Rule 12(b). In fact, the sentence from which *Nukida* quoted also listed

"failure of indictment or information to state an offense" as a matter which may be raised in a Rule 12(b) motion. See *United States v. Smith,* 866 F.2d 1092, 1096 n. 3 (9th Cir.1989). Moreover, in addition to listing these matters a defendant may raise before trial, the footnote in *Smith* listed several other matters a defendant must raise before trial.

preme Court in rejecting another cryptic indictment is equally appropriate here: "Far from informing [defendant] of the nature of the accusation against him, the indictment instead left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States,* 369 U.S. 749, 768, 82 S.Ct. 1038, 1049, 8 L.Ed.2d 240 (1962).[5]

■ The court is not evaluating the sufficiency of the evidence to support the allegations. Rather, this discussion shows that the pleading was so lacking in specificity that the government was able to make a significant change in the facts and theory without changing a word of the relevant portion of the Second Superseding Indictment. There is no assurance that the grand jury indicted on the same facts on which Volpe is now being prosecuted. A bill of particulars cannot cure this problem. *See Russell v. United States, supra,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050.

The lack of sufficient detail in the ERISA fraud counts also hampers the defendant's ability to prepare his defense. The Second Superseding Indictment is unclear as to whether ERISA plans were created by virtue of the subscription to WET, whether WET was in fact an asset in each member employer's plan, who the administrator of each of the ERISA plans was, whether any ERISA plan actually filed a Form 5500, or whether the record-keeping requirement was triggered by a Form 5500 or another form in the 5500 series. Given these uncertainties as well as the complexity of ERISA, the court is not convinced that the Second Superseding Indictment contains sufficient detail to enable Volpe to prepare his defense. Even if a bill of particulars could fill these information gaps, doubts would linger as to whether the grand jury indicted on the same facts as those set forth in the indictment.

The need for specificity in an indictment is particularly important where the crime is of the type here alleged. The government seeks to hold Volpe liable based on the status and required conduct of third parties under the highly technical ERISA provisions. Under the government's theory, Volpe may be held liable even if he does not know the third parties or what they are doing. Some of the required information is about conduct that may not have occurred. Yet, because the government contends that liability may exist if some third party had a duty under ERISA, even if that third party did not fulfill the duty or know of it. The government must charge a connection between Volpe's false statements and an ERISA plan's insufficient detail to determine whether there is an allegation of an ERISA violation.

The lack of sufficient detail in the indictment also hampers the court's evaluation of the indictment. Thus, at least three of the four goals described in *United States v. Bernhardt, supra,* are not met. The Second Superseding Indictment is dismissed because it is not sufficiently specific as to the ERISA fraud counts.

2. *Sufficiency Of The Second Superseding Indictment To Charge An Offense Under 18 U.S.C. Section 1027*

The applicable ERISA fraud statute provides:

Whoever, in any document required by title I of [ERISA] to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, *knowing it to be false,* or *knowingly* conceals, covers up, or fails to disclose any fact the disclosure of *which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title* to be published or any information re-

5. In a recent brief—more than two years after the original Indictment was filed and almost five years after the government investigation of ABC began—the AUSA "concede[d] that it has not, to date, adequately explained to either defense counsel or the Court how 18 U.S.C. § 1027 reaches the conduct alleged in the Second Superseding Indictment." (Brief Of United States For Use At Hearing On Defendant Volpe's Motion To Dismiss, filed March 29, 1994, p. 2:10–13.)

quired by such title to be certified, shall be fined not more than $10,000, or imprisoned not more than five years, or both. (18 U.S.C. § 1027, emphasis added.)

The requirements of Section 1027 for false representation are different from the requirements for concealment. A false statement must be made in a document required by ERISA to be either (1) published by a plan, (2) kept as part of the records of such a plan, or (3) certified to the administrator of such a plan. Similarly, a concealment must occur in one of these three kinds of documents, "but it *also* must relate to a fact the disclosure of which is required by ERISA or is necessary to verify, explain, or check for accuracy and completeness any information required by ERISA to be published." *United States v. Sarault*, 840 F.2d 1479, 1482 (9th Cir.1988). The statute's language does not require that the false statement relate to any particular fact.

ERISA's record-keeping requirements are stated in 29 U.S.C. Section 1027. Anyone subject to a requirement to file a report

shall maintain records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions.... (29 U.S.C. § 1027.)

a. *Whether The Documents Were Required To Be Maintained By An ERISA Plan Administrator*

■ The critical question is whether ABC's monthly contribution statements are within the purview of 29 U.S.C. Section 1027,

which defines the records required to be kept for purposes of the criminal statute.

The government contends that the documents are within the scope of the statute because the Form 5500 must list the plan's assets and liabilities as a proportion of all the trust's assets and liabilities and, therefore, the inclusion of an improper participant changes everyone's proportionate shares. The reasoning is basically as follows: ABC's inclusion in WET changed each ERISA plan's proportionate share of WET's assets and liabilities. ABC's monthly contribution statements for 1988 could be used to verify each plan's share of WET's assets and liabilities as reported by each plan in response to Questions 34 and 35 on the 1988 Form 5500.[6] Therefore, every ERISA plan was required to keep a copy of the monthly contribution statements of every other member employer in WET.[7]

■ The court is unable at this juncture to determine whether proportional reporting was required here. The Second Superseding Indictment does not identify the nature of the WET program (e.g., whether it was a common/collective trust, a master trust, or and insurance-like program). Nor does it state the number of participants in each of the approximately 200 ERISA plans subscribing to WET. A plan's reporting obligations may differ depending on what is done with the plan funds (*compare, e.g.,* 29 U.S.C. § 1023(b)(3)(G) *with* 29 U.S.C. § 1023(e)) as well as the number of participants in a plan (*e.g.,* 29 C.F.R. § 2520.104–41). Without knowing the characteristics of WET and the number of participants in each plan, each plan's reporting requirements cannot be determined. Without knowing a plan's reporting requirements, its record-keeping duties cannot be determined.

6. Plan assets and liabilities were covered in Questions 13–14 in the 1987 Form 5500 and in Questions 34–35 in the 1988 Form 5500. Although numbered differently, the questions were the same in 1987 and 1988. For simplicity's sake, the court will discuss only the 1988 Form 5500, although the same discussion applies to the 1987 Form 5500.

7. In this case, each plan Administrator would have approximately 2,400 pages per year (approximately 200 members in WET multiplied by

the 12 monthly contribution statements each submitted) to lend support to the implicit representation of the plan that it had a certain portion of WET's assets and liabilities. (No question on Form 5500 directly asks the plan to identify its percentage interest in any trust.) Of course, many other documents would be required, such as financial statements, to support the dollar figures written down in response to Questions 34 and 35 on the Form 5500.

The government's proportionality argument is not without support. *See e.g.,* Revision of Annual Information Return/Reports, 54 Fed.Reg. 8,631, 8,634–35 (1989). Its applicability to this case, however, cannot be determined before trial.

Assuming *arguendo* that proportional reporting is required, it is not clear that the monthly contribution statements would be required to be kept by the administrator of each plan. The plan must keep documents "which *will* provide in sufficient detail the necessary basic information and data" to check the report—not every document which *might* provide the information. Volpe's liability will depend on whether there were documents that provided in a more direct way the basic information and data in sufficient detail to check an ERISA plan's proportional share in WET. If there were, for example, statements by WET describing the number of employers or each employer's proportionate interest in WET, the plan would not need to keep documents as remote as the monthly contribution statements to enable the ERISA plan's percentage interest in WET to be checked.

An expansive reading of ERISA's record-keeping requirement is undesirable for several reasons. Requiring the retention of documents which are unnecessary or which provide a double-check could turn ERISA record-keeping into an onerous ordeal. Employers might avoid offering fringe benefits out of fear of being subject to such a record-keeping requirement. Additionally, it may well be impossible for an ERISA plan administrator to comply with a broad reading of the statute because an administrator may not be able to control every document that supports information in an ERISA report. Finally, a broad reading of the record-keeping statute may create an improper expansion of the ERISA fraud statute. A person making a written false statement—regardless of materiality—could violate the ERISA fraud statute unknowingly because liability depends in large part on what another party does or should do with the document.[8] There is a risk inherent in finding that immaterial documents are within the scope of the statute. The risk is criminalizing conduct under the ERISA statute which Congress did not intend to criminalize.

The court may not speculate what documents eventually will be introduced into evidence. Thus, the court cannot now determine that the information in the Form 5500 could be verified and checked by documents less remote than the monthly contribution statements and thereby obviate the need for a plan's retention of the monthly contribution statements of every other participant in the trust. That determination will have to be made at trial.

### b. *The Reach Of 18 U.S.C. Section 1027*

■ The government's position is that 18 U.S.C. Section 1027 reaches false statements made by one who is not an ERISA plan or fiduciary, who is not dealing directly with an ERISA plan, and who is unaware of the existence of the ERISA plan which forms the basis of his alleged crime. Despite diligent search, neither party has located a case factually on point.

Courts have consistently construed the ERISA fraud statute to have a broad reach. Earlier cases involved defendants who were fiduciaries, employers, employees, or persons dealing directly with a plan subject to ERISA or ERISA's predecessor, WPPDA, by: writing to a plan administrator; participating in a plan; providing medical services to a plan; aiding and abetting a fraud as an employee covered by the plan; falsifying records sent to a plan as an employer participant; acting as a trustee to plan; administering a WPPDA fund; or supervising two benefit funds for a salary. *E.g., United States v. Sarault,* 840 F.2d 1479 (9th Cir.1988) (insurer's general counsel writing to ERISA plan administrator); *United States v. Bartkus,* 816 F.2d 255 (6th Cir.1987), *cert. denied,* 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 90 (1987)

---

8. In this case, the government's theory charges a person with a crime who has no connection to an ERISA plan for his false statement in a document submitted to an entity that was not an ERISA plan, which in turn has or will turn the document over to ERISA plans which did not know they were ERISA plans and did not file the reports to which the monthly contribution statement applies.

(ERISA plan participants); *United States v. Martorano,* 767 F.2d 63 (3d Cir.1985), *cert. denied,* 474 U.S. 949, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985) (provider of medical services for an ERISA plan); *United States v. Odom,* 736 F.2d 150 (5th Cir.1984) (employee covered by an ERISA plan—aiding and abetting liability only); *United States v. S & Vee Cartage Co.,* 704 F.2d 914 (6th Cir.1983), *cert. denied,* 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983) (employer falsifying records sent to ERISA fund in which it participated); *United States v. Tolkow,* 532 F.2d 853 (2d Cir.1976) (trustee of WPPDA pension fund); *United States v. Santiago,* 528 F.2d 1130 (2d Cir.1976), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2169, 48 L.Ed.2d 795 (1976) (trustee/administrator of WPPDA welfare fund); *United States v. McCrae,* 344 F.Supp. 942 (E.D.Penn.1972), *aff'd without op.,* 475 F.2d 1397 (3d Cir.1973) (salaried supervisor of two WPPDA employee benefit funds).

This case involves a very different category of defendant. To claim that the present case easily fits under existing precedent overstates the rule from the case law. ERISA applies to employers, but this is not the end of the analysis. In each case involving an employer, the employer was dealing with an ERISA or WPPDA plan. Employer status itself is not determinative; rather it is the fact that the employer is connected to an ERISA or WPPDA plan that counts. · Attaching the label of ."employer" to either Volpe or ABC does not aid analysis because there is no ERISA plan associated directly with Volpe or ABC.

■ Although not convinced that 18 U.S.C. Section 1027 was intended to be read as broadly as the government claims, the court is not free to ignore the statute's language. Volpe requests that the criminal statute be applied with lenity. This statutory interpretation rule comes into play only when the statute is ambiguous and the legislative history is unclear. *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985); 3 Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 59.03 (5th ed. 1992). Volpe does not point to an ambiguity in the statute, nor is any ambiguity readily evident. Ac-

cordingly, the court is constrained to conclude that a person need not have any relationship to an ERISA plan to be subject to 18 U.S.C. Section 1027.

### c. *Misstatement Of The Law*

■ The Second Superseding Indictment misstates ERISA's record-retention provisions. It alleges that the plan Administrator was required (pursuant 29 U.S.C. Sections 1023, 1024, and 1027) to file a Form 5500 "and to maintain records on matters of which disclosure in the annual report *may be* verified, explained, clarified, and checked for accuracy and completeness." (Second Superseding Indictment, p. 2:8–13, emphasis added.) The statute requires one to maintain records "on the matters of which disclosure *is* required which will provide in sufficient detail the necessary basic information and data from which the documents thus required *may be* verified" etc. 29 U.S.C. § 1027, emphasis added. The Second Superseding Indictment's charging language would permit liability based on retention of records pertaining to matters disclosed in a report, regardless of whether the matter was required to be disclosed. An unnecessary disclosure on a form would trigger a record retention duty under the language of the Second Superseding Indictment. That is not the law. Also, the statute only requires retention of documents which "will provide in sufficient detail the necessary basic information and data," but the Second Superseding Indictment omits this limiting language. These fatal defects also require dismissal of the ERISA fraud counts.

### C. *Mail Fraud*

#### 1. *Viability Of The Government's Theory*

■ The mail fraud statute provides, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for

mail matter, any matter or thing whatever to be sent or delivered by the Postal Service ... shall be fined not more than $1,000 or imprisoned not more than five years, or both. (18 U.S.C. § 1341.)

The parties dispute whether the indictment alleges any property interest cognizable under 18 U.S.C. Section 1341, as interpreted by *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The government claims that the property interest was "health coverage, at the offered group rate, for individuals who were, in fact, not eligible for coverage." (Second Superseding Indictment, p. 26:22–24.) The government contends that the group rate obtained was cheaper than individual coverage rates. Volpe contends that no loss occurred because ABC paid full price for the product. Volpe also argues that WET could not be deprived of something it never owned nor could have owned, *i.e.*, individual health care coverage, because WET did not offer individual health care coverage. Volpe reasons that *McNally* does not permit an indictment when there is no property right, let alone an invasion thereof.

Relying heavily on *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir.1992), Volpe claims that dismissal is required because here, as in *Bruchhausen*, the seller received the full sales price for the product sold. In *Bruchhausen*, the defendant purchased weapons at the established price and then caused the weapons to be shipped to Soviet Bloc countries, despite his representations to the manufacturers that the weapons would not be shipped there. Representatives of the manufacturers testified that they would not have sold weapons to Bruchhausen had they known the truth. The indictment charged that Bruchhausen's objective was to defraud the manufacturers "of their property and their right to make business decisions based on truthful information and representations." 977 F.2d 464, 467. The court observed that the "manufacturers received the full sale price for their products; they clearly suffered no monetary loss. While they may have been deceived into entering sales that they had the right to refuse, their actual loss was in control over the destination of their products after sale. It is difficult to discern why they had a property right to such post-sale control." *Ibid.* The interest of the manufacturers in seeing that the products they sold were not shipped to Soviet Bloc countries in violation of federal law was not property within the meaning of the mail fraud statute. 977 F.2d 464, 468.

The nature of the product sold makes this case distinguishable from *Bruchhausen*. Volpe's conduct purportedly exposed WET to a potential monetary loss. The health care coverage obtained by Volpe required future performance by WET and did not have a single value to the seller as the weapons did in *Bruchhausen*. The cost to the seller of weapons apparently was the same, regardless of who the customer was or where the customer eventually used the weapons. By contrast, the cost to the seller of health care coverage may vary depending on how much the seller has to pay out on behalf of a customer. The cost of a health care coverage product to the seller thus depends on the characteristics of the customer. The government states that the rates for group health care coverage are approximately 17% lower than the rates for individual coverage, presumably reflecting lower expected costs to provide services. In analyzing the mail fraud count, the court assumes that the ABC applicants would have paid more on an individual basis than as a group. If the facts develop that the individual policy rates for the Volpe applicants were of lesser or equal cost, then the situation may be similar to that in *Bruchhausen*, and not a crime. Volpe contends that eligibility did not have an economic impact on WET. The trier of fact must determine whether eligibility had or may have an economic impact on WET.

Volpe also argues that WET had no property right because WET did not sell individual health care coverage. Volpe's false statements induced WET to sell a product to him that WET would not have sold had it known the truth. But Volpe's deception also may be said to have deprived WET of the customers WET expected to receive as a result of the transaction. Mail fraud liability may be based on a person's misrepresentation of his

eligibility to obtain a product if it causes a loss to the seller.

A useful analysis is provided in *United States v. Mullins,* 992 F.2d 1472 (9th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993). There, travel agents obtained frequent flyer award coupons from an airline by transferring credit for mileage accumulated from one customer's account to another customer's account, thereby falsifying the latter's eligibility for a frequent flyer award coupon. By submitting the false information, the defendants caused the victim (i.e., the airline) to issue contractual obligations (i.e., the coupons) which it otherwise would not have issued. These contractual obligations were "property" for purposes of the mail fraud statute. 992 F.2d 1472, 1476. Similarly, Volpe allegedly lied about eligibility and caused WET to issue contractual obligations (i.e., the health coverage plan requiring WET to pay claims) which WET otherwise would not have issued. *See also United States v. Granberry,* 908 F.2d 278, 280 (8th Cir.1990) (mail fraud conviction upheld where job applicant obtained job for which he would not have been eligible had employer known of applicant's criminal record).

The deceit must be coupled with a contemplated harm to the victim and the harm contemplated must affect the very nature of the bargain itself. The misrepresentations about the applicants' employment status in order to obtain less expensive health care coverage and to induce WET to provide coverage for the ABC applicants affected the very nature of the bargain. This is not a situation in which the contemplated harm was merely incidental to the deceit.

### D. *Disputes Regarding the AUSA's Conduct And Statute Of Limitations*

At the hearings on the motion to dismiss, counsel spent considerable time discussing the propriety of the AUSA's conduct in this case. In his moving papers, defendant stated: "We have a number of equitable concerns regarding the prosecution's conduct but as we seek dismissal on the face of the government's allegations we feel that they best be left to another day." (Memorandum In Support Of Motion To Dismiss Second Superseding Indictment, pp. 20:15–21:2.) The fact that this issue was set aside did not prevent the parties from assailing the integrity of their opponents. The court declines to rule on the issue of whether equitable concerns compel dismissal of the case because defendant has not moved for dismissal based on this ground.

At the May 2, 1994 hearing on the motion to dismiss, the parties mentioned a possible statute of limitations problem. The issue has not been adequately briefed to permit consideration of any statute of limitations defense. The court therefore declines to rule on it at this time.

### DISPOSITION

Having determined that Counts 1 through 23 fail to charge an offense under 18 U.S.C. Section 1027 (ERISA fraud), but finding that the mail fraud counts are adequately alleged, the court GRANTS in part and DENIES in part defendant's motion to dismiss. Counts 1 through 23 of the Second Superseding Indictment are DISMISSED for failing to contain a plain, concise and definite statement of the essential facts constituting the offense.

IT IS SO ORDERED.

